LOCAL 1467, INTERNATIONAL ASSOCIATION OF
FIREFIGHTERS, AFL-CIO v CITY OF PORTAGE

Docket No. 63154. Submitted November 9, 1982, at Lansing.—Decided
May 14, 1984. Leave to appeal applied for.

Petitioner, Local 1467, International Association of Firefighters,
AFL-CIO, and respondent, City of Portage, were parties to a
collective-bargaining agreement that expired on June 30, 1979.
The agreement provided for quarterly cost-of-living allowance
(COLA) adjustments. On August 24, 1979, following three nego-
tiation sessions regarding a new contract, respondent notified
petitioner that it would not continue periodic COLA adjust-
ments pursuant to the expired agreement during the bargain-
ing process. The parties continued negotiations thereafter. On
September 7, 1979, petitioner filed an unfair labor practice
charge with the Michigan Employment Relations Commission
(MERC). A hearing referee then determined that COLA adjust-
ments of the contract were a condition of employment that
would continue after the expiration date of the collective-bar-
gaining agreement and that COLA adjustments could not be
unilaterally altered in the absence of an impasse reached in
good faith. The referee concluded that since no impasse existed
the respondent's action violated subsections 10(1)(a) and (e) of
the public employment relations act (PERA). The referee issued
a decision and recommended order with sanctions based
thereon. The Michigan Employment Relations Commission
thereafter reversed and dismissed the charges finding that the
contract did not call for COLA adjustments after the expiration
of the contract. Petitioner appeals. *Held:*

1. The COLA provision clearly had a significant impact on
the wages and conditions of employment of the employees
herein so as to be a "mandatory subject" of bargaining which
survived the expired contract during the bargaining process for
a new contract.

2. The phrase of the contract "for the life of the agreement"

REFERENCES FOR POINTS IN HEADNOTES
[1] 2 Am Jur 2d, Administrative Law §§ 654, 688 *et seq.*
[2-5] 48 Am Jur 2d, Labor and Labor Relations §§ 966, 1000 *et seq.*,
1080.
48A Am Jur 2d, Labor and Labor Relations §§ 1770, 1790.

could not terminate the policy or practice established by the COLA provision during the bargaining process for a new contract any more than it could terminate a wage itself during the process.

3. Where a COLA provision establishes a practice or policy of making regular COLA adjustments to wages which has a significant impact on the said wages or other conditions of employment so as to be a "mandatory subject" of bargaining, the provision survives the expiration date of the contract during the bargaining process for a new contract as a matter of law pursuant to PERA.

Reversed and remanded for further proceedings consistent with the opinion.

1. APPEAL — COURT OF APPEALS — EMPLOYMENT RELATIONS COMMISSION.

Findings by the Michigan Employment Relations Commission are to be upheld on appeal when such findings are supported by competent, material, and substantial evidence; the Court of Appeals may review the law involved in a dispute regardless of the factual findings of the commission.

2. LABOR RELATIONS — PUBLIC EMPLOYMENT — MANDATORY SUBJECTS OF BARGAINING.

A public employer is charged with the duty to bargain in good faith at the expiration of a labor contract pursuant to a proposed new contract with respect to "mandatory subjects" of bargaining such as wages, hours, and other terms and conditions of employment (MCL 423.215; MSA 17.455[15]).

3. LABOR RELATIONS — PUBLIC EMPLOYMENT — MANDATORY SUBJECTS OF BARGAINING — UNFAIR LABOR PRACTICES — UNILATERAL ACTION.

Wages, hours, and other terms and conditions of employment established by a contract between a public employer and its employees which are "mandatory subjects" of bargaining survive the expiration of the contract by operation of law during the bargaining process regarding a new contract; the public employer has a continuing obligation during the bargaining process on the new contract to apply those wages, hours, and other terms and conditions of employment so designated as mandatory subjects of bargaining until such time as an impasse is reached in the bargaining process; neither party may take unilateral action on a mandatory subject of bargaining absent an impasse in negotiations; an employer taking such unilateral

action prior to an impasse in negotiations has committed an unfair labor practice (MCL 423.210[1][e], 423.215; MSA 17.455[10][1][e], 17.455[15]).

4. LABOR RELATIONS — PUBLIC EMPLOYMENT — MANDATORY SUBJECTS OF BARGAINING — UNILATERAL ACTION — STRIKES.

The prohibition against a public employer's taking unilateral action on a mandatory subject of bargaining contained in an expired contract with public employees prior to such time as an impasse is reached in the negotiations on a new contract must be liberally construed in light of the prohibition against striking by public employees (MCL 423.202, 423.215; MSA 17.455[2], 17.455[15]).

5. LABOR RELATIONS — PUBLIC EMPLOYMENT RELATIONS ACT — MANDATORY SUBJECTS OF BARGAINING.

Any matter that has a significant impact on wages, hours, or other conditions of employment or which settles an aspect of the employer-employee relationship is a mandatory subject of bargaining pursuant to the public employment relations act (MCL 423.201 *et seq.*; MSA 17.455[1] *et seq.*).

*Marston, Sachs, Nunn, Kates, Kadushin & O'Hare, P.C.* (by *Theodore Sachs* and *Bruce A. Richard*), for petitioner.

*Combs, Huff, Carey, Callander & Hudgins* (by *Philip R. Carey*), for respondent.

Amicus Curiae:

City of Detroit (by *Donald Pailen,* Corporation Counsel, and *Kenneth G. King,* Assistant Corporation Counsel).

Before: T. M. BURNS, P.J., and BEASLEY and K. N. HANSEN,* JJ.

K. N. HANSEN, J. Petitioner appeals as of right from a December 3, 1981, dismissal by the Michi-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

gan Employment Relations Commission (MERC) of an unfair labor practice charge.

Petitioner and respondent were parties to a collective-bargaining agreement that expired on June 30, 1979. The agreement provided for quarterly cost-of-living allowance (COLA) adjustments as follows:

"Section 2: Effective with the B.L.S. Consumers Price Index for July, 1977, as the base, the adjustment in the Cost-of-Living Allowance shall be made quarterly as of the first pay period beginning on or after the first day of the ninth, twelfth, sixth and third calendar months of the year and shall be based on the B.L.S. Consumers Price Index as of the second preceding month. For example:

| "Adjustment "Shall Be Made In | Based Upon Index for Preceding |
|---|---|
| "September | July |
| "December | October |
| "March | January |
| "June | April |

"In no event will a decline in the B.L.S. Consumers Price Index below that of July 31, 1976, provide the basis for any reduction in the Cost-of-Living.

\* \* \*

"If the Bureau of Labor Statistics changes the form or the basis of calculating the B.L.S. Consumers Price Index, the parties agree to request the Bureau to make available, *for the life of the agreement,* a monthly Consumers Price Index in its present form and calculated on the [same, *sic]* basis as the Index for April, 1977." (Emphasis added.)

On April 30, 1979, petitioner sent a letter to respondent indicating that it was ready to negotiate a new contract. Negotiation sessions were held on June 11, August 8, and August 16, 1979. On

August 24, 1979, respondent notified the union in writing that it would not continue periodic COLA adjustments pursuant to the expired agreement during the bargaining process. The parties continued negotiations on September 5, 1979. On September 7, 1979, petitioner filed an unfair labor practice charge with MERC, alleging that respondent's unilateral change in COLA adjustments was a violation of its duty to bargain, contrary to § 10 of the public employment relations act (PERA), MCL 423.210; MSA 17.455(10). Thereafter, the parties met and continued negotiations including discussions on wages and COLA adjustments on October 16, November 1, and November 7, 1979. In January, 1980, petitioner filed for binding arbitration. A hearing was held on the unfair labor practice charge before hearing referee Bixler on May 15, 1980.

Referee Bixler determined that COLA adjustments of the contract were a condition of employment that would continue after the expiration date of the collective-bargaining agreement and that COLA adjustments could not be unilaterally altered in the absence of an impasse reached in good faith. As it was undisputed that no impasse existed at the time respondent ceased paying contractual COLA adjustments, Referee Bixler concluded that respondent's unilateral action violated § 10(1)(a) of PERA, as the action discouraged employees from the exercise of their right to bargain collectively with their employer, and § 10(1)(e) of PERA, as the action resulted in changing the conditions of employment without bargaining with the employees' representative. He issued his "Decision and Recommended Order" with sanctions based thereon.

In a two to one decision, the Michigan Employ-

ment Relations Commission (MERC) reversed and dismissed the charges.[1] It relied on the contractual language *"for the life of the agreement, * * *"* as set forth above, to determine that the:

"contract does not contain language that clearly and convincingly[2] indicates an intent by the parties to continue making adjustments to the base pay rates after expiration of the contract. * * *"

It further stated:

"We can imagine the situation in which the parties agree to continue making further COLA adjustments after expiration of contract. It would call for a strong showing by the union of language clearly and unmistakably requiring periodic adjustments to be made indefinitely as a way of maintaining constant real purchasing power."

Petitioner contends that the COLA provision herein is a "mandatory subject" of bargaining that, as a matter of law, continued in effect after the expiration date of the said contract and during the bargaining process prior to impasse in negotiations. Respondent contends that MERC made a factual finding that the contract herein did not provide for continued COLA adjustments beyond the life of the contract and that this factual deter-

[1] MERC has reversed itself to the extent that this matter is inconsistent with *Wayne County Bd of Comm'rs v American Federation of State, County and Municipal Employees, Council 25, and its affiliated Locals 25, 409, 1659, 1905, 1917, and 2926,* MERC Case No C83 E-136 (1984).

[2] In addition, a review of the record set forth herein reveals that MERC properly placed the burden of proof of establishing the unfair labor practice in this matter on the petitioner. However, it does appear that they improperly applied the standard of proof of that of clear and convincing evidence. The standard of proof in unfair labor practice matters is that of the preponderance of the evidence. MCL 423.216; MSA 17.455(16).

mination is supported by competent, material, and substantial evidence.

MERC's findings of fact are upheld if supported by competent, material, and substantial evidence. *Employment Relations Comm v Detroit Symphony Orchestra, Inc,* 393 Mich 116, 124; 223 NW2d 283 (1974). This Court may review the law regardless of the factual findings of the commission. *Regents of University of Michigan v Employment Relations Comm,* 389 Mich 96, 102; 204 NW2d 218 (1973).

At the expiration of a labor contract, a public employer is charged with the duty to bargain in good faith pursuant to a proposed new contract with regard to "wages, hours, and other terms and conditions of employment". MCL 423.215; MSA 17.455(15). Subjects of bargaining included in this phrase are referred to as "mandatory subjects" of bargaining. *Detroit Police Officers Ass'n v Detroit,* 391 Mich 44, 54; 214 NW2d 803 (1974). At contract expiration, those "wages, hours, and other terms and conditions of employment" established by the contract which are "mandatory subjects" of bargaining survive the contract by operation of law during the bargaining process. The public employer, thus, has the continuing obligation during the bargaining process to apply those "wages, hours, and other terms and conditions of employment" so designated as "mandatory subjects" until such time as impasse is reached in the bargaining process. *National Labor Relations Bd v Haberman Construction Co,* 618 F2d 288, 302-303 (CA 5, 1980), *rev'd on reh on other grounds* 641 F2d 351 (1981); *Bay Area Sealers,* 251 NLRB No 17; 105 LRRM 1545; 1980-81 CCH, NLRB, § 17, 477 (1980).[3]

---

[3] Precedent under the NLRA is persuasive in construing PERA's requirements, because of the parallel language of the two statutes. See *Kalamazoo City Ed Ass'n v Kalamazoo Public Schools,* 406 Mich 579, 593, fn 1; 281 NW2d 454 (1979); *Lamphere Schools v Lamphere*

Neither party may take unilateral action on a "mandatory subject" of bargaining absent an impasse in negotiations. *Central Michigan University Faculty Ass'n v Central Michigan University,* 404 Mich 268, 277; 273 NW2d 21 (1978). An employer taking unilateral action on a "mandatory subject" of bargaining prior to impasse in negotiations has committed an unfair labor practice. MCL 423.210(1)(e); MSA 17.455(10)(1)(e); see *Detroit Police Officers Ass'n v Detroit,* 61 Mich App 487, 490; 233 NW2d 49 (1975), *lv den* 395 Mich 756 (1975). This prohibition against unilateral action prior to impasse serves to foster labor peace and must be liberally construed, particularly in light of the prohibition against striking by public employees set forth in MCL 423.202; MSA 17.455(2). See *Van Buren Public School Dist v Wayne Circuit Judge,* 61 Mich App 6, 27; 232 NW2d 278 (1975).

Any matter that has a significant impact on "wages, hours, or other conditions of employment" or settles an aspect of the employer-employee relationship is a "mandatory subject" of bargaining. *Detroit v Michigan Council 25, American Federation of State, County and Municipal Employees,* 118 Mich App 211, 215; 324 NW2d 578 (1982); *Houghton Lake Ed Ass'n v Houghton Lake Community Schools,* 109 Mich App 1, 6; 310 NW2d 888 (1981). A review of the COLA provision herein plainly indicates that a policy or practice of making periodic adjustments to the wages of the employees was established as per the schedule/formula set forth in the said provision. As such, the COLA provision clearly had a significant impact

*Federation of Teachers,* 400 Mich 104, 120; 252 NW2d 818 (1977); *Pontiac Police Officers Ass'n v Pontiac,* 397 Mich 674; 246 NW2d 831 (1976); *Employment Relations Comm v Reeths-Puffer School Dist,* 391 Mich 253, 260; 215 NW2d 672 (1974), *cf. Abood v Detroit Bd of Ed,* 431 US 209, 233; 97 S Ct 1782; 52 L Ed 2d 261 (1977).

on the wages and conditions of employment of the employees herein so as to be a "mandatory subject" of bargaining which survived the expired contract during the bargaining process. See *Office & Professional Employees International Union, Local 2 v Washington Metropolitan Area Transit Authority,* 552 F Supp 622, 633-634 (D DC, 1982). The phrase of the contract *"for the life of the agreement, * * *"* therefore could not terminate the policy or practice established by the COLA provision during the bargaining process any more than it could terminate a wage itself during the process. *Haberman Construction Co, supra,* and *Bay Area Sealers, supra.*

We, therefore, hold that where a COLA provision establishes a practice or policy of making regular COLA adjustments to wages which has a significant impact on the said wages or other conditions of employment so as to be a "mandatory subject" of bargaining, the provision survives the expiration date of the contract during the bargaining process as a matter of law pursuant to PERA. The decision of MERC is, therefore, reversed and the cause is remanded for further proceedings consistent with this opinion. On remand, the commission shall issue an order corresponding to that recommended by the hearing referee, with allowance for subsequent changes in circumstance. We retain no jurisdiction.