AMERICAN FEDERATION OF STATE, COUNTY AND
MUNICIPAL EMPLOYEES, COUNCIL 25 v WAYNE COUNTY

Docket No. 84103. Submitted January 23, 1986, at Detroit. Decided
May 21, 1986. Leave to appeal denied, 426 Mich 874.

After the collective bargaining agreement between Council 25 of
the American Federation of State, County and Municipal Em-
ployees and its affiliated locals (AFSCME) and Wayne County
expired, the parties reached a tentative agreement regarding a
new contract, which essentially continued the terms of the
earlier agreement. However, the Wayne County Board of Com-
missioners rejected the tentative agreement, so the parties
resumed negotiations. While negotiations were ongoing, Wayne
County's plan for reorganization of government went into
effect, commencing with the election of a county executive. The
parties reached a second tentative agreement, but the AFSCME
membership rejected it. The parties eventually agreed to medi-
ation, and mediation was conducted. AFSCME was thereafter
advised by letter that the county would no longer honor the
expired collective bargaining agreement and that forthcoming
changes in conditions of employment would include the imposi-
tion of a four-day work week and corresponding pay decreases,
as well as changes in procedures governing grievances, discipli-
nary measures, transfers, demotions, promotions, reclassifica-
tions and layoffs. Mediation continued and a third tentative
agreement was reached. However, the AFSCME membership
rejected it. AFSCME requested the Michigan Employment Rela-
tions Commission (MERC) to intervene in the mediation proceed-
ings as a fact finder. While the request was pending, AFSCME
was informed by the county that the county viewed the AFSCME
membership's vote rejecting the third tentative agreement as
constituting an impasse in the negotiations and that the

REFERENCES

Am Jur 2d, Administrative Law §§ 278 *et seq.*

Am Jur 2d, Labor and Labor Relations §§ 998 *et seq.,* 1073 *et seq.,*
1764, 1770, 1771.

What constitutes unfair labor practice under state public employee
relations acts. 9 ALR4th 20.

See also the annotations in the ALR3d/4th Quick Index under
Labor and Labor Unions.

changes in employment conditions previously discussed would be implemented. AFSCME denied the existence of an impasse and requested further bargaining. Nevertheless, the county implemented its proposed changes. AFSCME filed unfair labor charges before MERC against respondents, Wayne County, the Wayne County Board of Commissioners, and the Wayne County Executive. A hearing officer issued findings of fact and concluded that respondents had not engaged in any unfair labor practices under the public employment relations act. MERC disagreed with the hearing officer's conclusions of law and issued an opinion and order, concluding that respondents had violated their duty to bargain in good faith by implementing unilateral changes in mandatory subjects of bargaining during the negotiation process. MERC reserved its decision on the issuance of retroactive relief for AFSCME employees and allowed the parties a period of time to settle their differences on the relief issue without administrative intervention. MERC issued a supplemental opinion and ordered respondents not to implement the disputed changes in conditions of employment and further ordered respondents to make AFSCME employees whole for any monetary losses suffered as a result of respondents' unlawful unilateral action. Respondents appealed. AFSCME cross-appealed challenging MERC's limited make-whole relief.
*Held:*

1. The changes in working conditions unilaterally implemented by respondents after AFSCME had requested MERC to intervene as fact finder but before MERC took action on the request was a breach of respondents' duty to bargain in good faith and constituted an unfair labor practice.

2. MERC's fact-finding function in mediation proceedings is permissive in nature and not compulsory. In this case, the effect of MERC's decision did not make fact-finding compulsory as respondents argued.

3. The decision by MERC to promulgate a new principle of law, i.e., that an employer commits an unfair labor practice where it takes a unilateral action affecting a mandatory subject of bargaining after MERC has been requested to intervene in the mediation proceedings as a fact finder but before MERC can take action on the employee's request, in the adjudicative proceedings involving these parties rather than through its rule-making power did not amount to an abuse of its discretion.

4. MERC did not err as a matter of law nor did it abuse its discretion in deciding to apply retroactively the rule it announced in this case.

Affirmed.

1. LABOR RELATIONS — PUBLIC EMPLOYMENT — MANDATORY SUBJECTS OF BARGAINING.

A public employer is charged with the duty to bargain in good faith at the expiration of a labor contract pursuant to a proposed new contract with respect to mandatory subjects of bargaining such as wages, hours, and other terms and conditions of employment (MCL 423.215; MSA 17.455[15]).

2. LABOR RELATIONS — PUBLIC EMPLOYMENT — MANDATORY SUBJECTS OF BARGAINING — UNFAIR LABOR PRACTICES — UNILATERAL ACTION.

Wages, hours, and other terms and conditions of employment established by a contract between a public employer and its employees which are mandatory subjects of bargaining survive the expiration of the contract by operation of law during the bargaining process regarding a new contract; the public employer has a continuing obligation during the bargaining process on the new contract to apply those wages, hours, and other terms and conditions of employment so designated as mandatory subjects of bargaining until such time as an impasse is reached in the bargaining process; neither party may take unilateral action on a mandatory subject of bargaining absent an impasse in negotiations (MCL 423.210[1][e], 423.215; MSA 17.455[10][1][e], 17.455[15]).

3. LABOR RELATIONS — PUBLIC EMPLOYMENT — MANDATORY SUBJECTS OF BARGAINING — UNFAIR LABOR PRACTICES — UNILATERAL ACTION.

A public employer taking a unilateral action on a mandatory subject of bargaining, where the employer and its employees are involved in mediation and the Michigan Employment Relations Commission has yet to make findings of fact at the request of the employees, has committed an unfair labor practice (MCL 423.25[1], 423.210[1][e], 423.215; MSA 17.454[27][1], 17.455[10][1][e], 17.455[15]).

4. ADMINISTRATIVE LAW — RULES — ADJUDICATIVE PROCEEDINGS — RULE-MAKING PROCEEDINGS.

An administrative agency need not always promulgate rules to cover every conceivable situation before enforcing a statute; an administrative agency may announce new principles through adjudicative proceedings in addition to rule-making proceedings.

5. ADMINISTRATIVE LAW — RULES — ADJUDICATIVE PROCEEDINGS — RULE-MAKING PROCEEDINGS.

The effective administration of a statute by an administrative agency cannot always be accomplished through application of

predetermined general rules; rather, some principles of interpretation must evolve in response to actual cases in controversy presented to the agency; an administrative agency must therefore have the authority to act either by general rule or by individual order; the decision of an agency to promulgate law through rule-making or through adjudication rests within the sound discretion of that agency even where a rule breaks from past decisions or where previously established rules are reconsidered.

*Maurer & Kalls* (by *George M. Maurer, Jr.*), and *Greenspon, Scheff & Washington, P.C.* (by *George B. Washington*), for the charging parties.

*John D. O'Hair,* Corporation Counsel, and *Ellen C. Lindquist,* Assistant Corporation Counsel, for respondents.

Amicus Curiae:

*Donald Pailen,* Corporation Counsel, *Abigail Elias,* Deputy Corporation Counsel, and *Thomas L. Walters* and *Trudy D. Archer,* Assistant Corporation Counsel, for the City of Detroit.

Before: M. J. KELLY, P.J., and SHEPHERD and M. R. KNOBLOCK,* JJ.

M. J. KELLY, P.J. This is an appeal from a decision of the Michigan Employment Relations Commission which held that respondents Wayne County, Wayne County Board of Commissioners and the Wayne County Executive had engaged in unfair labor practices by unilaterally changing wages, hours and other conditions of employment during the collective bargaining process, contrary to § 10(1)(e) of the public employment relations act, MCL 423.201 *et seq.;* MSA 17.455(1) *et seq.* (PERA). At issue in this case is a significant principle of

---

* Circuit judge, sitting on the Court of Appeals by assignment.

public sector labor law. The City of Detroit has filed an amicus curiae brief in support of respondents' position. Council 25 of the American Federation of State, County and Municipal Employees ·and its affiliated locals (AFSCME) have filed a cross-appeal challenging that portion of the commission's order limiting its make-whole relief through July 5, 1984. We have thoroughly reviewed the administrative record and briefs on appeal and we affirm all aspects of the commission's decision.

There is no dispute as to the essential facts in this case, as set forth in the findings of the hearing officer and adopted by the commission. This controversy arises out of a collective-bargaining agreement between the parties, which became effective December 1, 1979, and expired on June 30, 1982. Prior to the expiration of the agreement, the parties began negotiating a new contract and reached a tentative agreement on July 1, 1982, which essentially continued the terms of the earlier agreement. This tentative agreement was, however, subsequently rejected by the Wayne County Board of Commissioners and negotiations continued. In a letter dated August 27, 1982, respondents informed AFSCME that, until either a new agreement or an impasse was reached, the earlier agreement would be continued with the exception of cost of living and arbitration provisions.[1]

Negotiations continued, during which time Wayne County's plan for reorganization of government went into effect, commencing with the election of a county executive, who took office on January 1, 1983. A second tentative agreement was reached between the parties in April of 1983 but was subsequently rejected by the AFSCME mem-

---

[1] Respondents' implementation of unilateral changes in COLA benefits and in arbitration procedures was the subject of another unfair labor practice charge before MERC and is not at issue here.

bership. Negotiations continued and the parties eventually agreed to mediation. Mediation proceedings were conducted on July 8 and July 11, 1983.

By letter of July 11, 1983, respondents advised AFSCME that they would no longer honor the expired collective bargaining agreement. Respondents further informed AFSCME that forthcoming changes in conditions of employment would include the imposition of a four-day work week and corresponding pay decreases, as well as changes in procedures governing grievances, disciplinary measures, transfers, demotions, promotions, reclassifications and layoffs. Mediation nevertheless continued but a third tentative agreement was rejected by AFSCME membership on August 4, 1983. On August 8, 1983, AFSCME applied to the commission for an appointment of a fact finder as provided under § 25(1) of the labor mediation act, MCL 423.1 *et seq.;* MSA 17.454(1) *et seq.*

While that application was pending, AFSCME was informed by respondents' letter of August 9, 1983, that respondents viewed the membership's vote on August 4, 1983, as an impasse and that the changes described in the July 11, 1983, letter would be implemented on August 15, 1983. AFSCME denied the existence of an impasse and requested further bargaining. The parties continued to negotiate although the respondents did proceed to implement the proposed changes.

AFSCME filed unfair labor charges against respondents on July 21, 1983, and on August 23, 1983. These charges were consolidated and hearings were subsequently conducted in September of 1983 before a hearing officer who, on January 19, 1984, issued findings of fact and concluded therefrom that respondents had not engaged in any unfair labor practices under PERA. The hearing

officer recommended the dismissal of AFSCME's charges.

Members of the commission disagreed with the hearing officer's conclusions of law and issued an opinion and order on December 12, 1984, concluding that respondents had violated their duty to bargain in good faith by implementing unilateral changes in mandatory subjects of bargaining during the negotiation process. At that time, the commission reserved its decision on the issuance of retroactive relief for AFSCME employees and allowed the parties until January 31, 1985, to settle their differences on the relief issue without administrative intervention. On March 29, 1985, MERC issued a supplemental opinion and ordered respondents to cease and desist from implementing the disputed changes in conditions of employment and to make employees whole for any monetary losses suffered during the period commencing August 15, 1983, and ending July 5, 1984.

The general principles of law governing an employer's right to implement changes in wages and other working conditions during the negotiation process are well established and have been set forth by this Court in *Local 1467, International Ass'n of Firefighters, AFL-CIO v Portage,* 134 Mich App 466, 472-473; 352 NW2d 284 (1984):

> At the expiration of a labor contract, a public employer is charged with the duty to bargain in good faith pursuant to a proposed new contract with regard to "wages, hours, and other terms and conditions of employment". MCL 423.215; MSA 17.455(15). Subjects of bargaining included in this phrase are referred to as "mandatory subjects" of bargaining. At contract expiration, those "wages, hours, and other terms and conditions of employment" established by the contract which are "mandatory subjects" of bargaining survive the

contract by operation of law during the bargaining process. The public employer, thus, has the continuing obligation during the bargaining process to apply those "wages, hours, and other terms and conditions of employment" so designated as "mandatory subjects" until such time as impasse is reached in the bargaining process.

Neither party may take unilateral action on a "mandatory subject" of bargaining absent an impasse in negotiations. An employer taking unilateral action on a "mandatory subject" of bargaining prior to impasse in negotiations has committed an unfair labor practice. MCL 423.210(1)(e); MSA 17.455(10)(1)(e). This prohibition against unilateral action prior to impasse serves to foster labor peace and must be liberally construed, particularly in light of the prohibition against striking by public employees set forth in MCL 423.202; MSA 17.455(2). [Citations and footnote omitted. See also, *Ottawa Co v Jaklinski*, 423 Mich 1, 12-13; 377 NW2d 668 (1985).]

In this case, we must consider what effect, if any, the initiation of fact-finding proceedings has on the employer's ability to make unilateral changes in conditions of employment without risk of committing an unfair labor practice under MCL 425.210(1)(e); MSA 17.455(10)(1)(e).

The commission's fact-finding function is created under the labor mediation act rather than under PERA and is thus properly viewed as a step in the mediation process:

When in the course of mediation under section 7 of Act No. 336 of the Public Acts of 1947, as amended, being section 423.207 of the Michigan Compiled Laws, it shall become apparent to the commission that matters in disagreement between the parties might be more readily settled if the facts involved in the disagreement were determined and publicly known, the commission may

make written findings with respect to the matters in disagreement. The findings shall not be binding upon the parties but shall be made public. [MCL 423.25(1); MSA 17.454(27)(1).]

AFSCME requested that the commission intervene in the mediation process as a fact finder on August 8, 1983, exactly one month after the commencement of mediation and four days after its membership had rejected the third tentative "mediated" agreement. Respondents informed AFSCME by letter of August 9, 1983, that the proposed changes in wages, hours and working conditions would become effective August 15, 1983. The issue is whether respondents violated their duty to bargain in good faith by announcing and unilaterally implementing the changes after fact-finding proceedings had been initiated, during the mediation process.

In its opinion of December 12, 1984, the commission concluded:

We will continue to regard factfinding as an integral part of the dispute resolution processes provided by the Legislature. We decide today that implementation of a last best offer when factfinding is pending is objectionable conduct by the Employer, for the reason that it obviously tends to forestall the possibility of reaching agreement through the use of the factfinding process. We conclude that by implementing its last best offer when factfinding had been initiated but not completed, Respondent violated its duty to bargain in good faith.

This conclusion was reaffirmed and amplified to some extent in the commission's supplemental opinion of March 29, 1985:

Moreover, as we indicated in our earlier deci-

sion, we consider the requirement that Respondent in this case complete factfinding before implementing its "last best offer" to be mandated by the statute. Section 25 of the Labor Mediation Act, MCLA 423.25; MSA 17.454(27), provides for factfinding under PERA when, in the discretion of the Commission, it determines that "matters in disagreement between the parties might be more readily settled if the facts involved in the disagreement were determined and publicly known." This procedure is not contained in the federal law and is clearly intended, in part, to balance the fact that under PERA employees do not have the right to strike. . . . The legislature was clearly sensitive to the special role that public opinion plays in a labor dispute in the public sector, and it expressed its will that an objective view of the facts and positions of both parties be made public where appropriate. As we indicated earlier, much of the benefit of this objective and public review is lost where a public employer, factfinding having been initiated but not completed, seizes the initiative by implementing its "bottom line" position. As previously stated, we find Respondent's implementation of its "last best offer" under these circumstances to be inconsistent with the statutory scheme and with its duty to bargain in good faith.

On appeal, respondents object to the principle of law announced by the commission on two basic grounds, which we consider separately.

Respondents first argue that the effect of the commission's decision is to make fact-finding a compulsory step in the mediation process, contrary to the intent of the Legislature in enacting MCL 423.25(1); MSA 17.454(27)(1). We agree that the commission's fact-finding function in mediation is permissive in nature and not compulsory. We fail, however, to see, nor do respondents adequately explain, how the commission's ruling renders that fact-finding function compulsory. In the instant

case, for example, the commission might have denied AFSCME's application at which time respondents could have implemented the changes in wages and working conditions, provided that impasse had in fact been reached.[2] Moreover, an employer is not precluded from implementing unilateral changes after an impasse has been reached where there has been no initiation of fact-finding procedures. Thus, had respondents implemented their changes after impasse but prior to any request for fact-finding on the part of AFSCME, AFSCME's unfair labor practice charges would have been dismissed. In our view, the principle of law announced by the commission in this case applies only where an application for fact-finding has been submitted by one of the parties or where the commission itself has determined that fact-finding is necessary.

Respondents further argue that the commission's decision is unlawful because it promulgates a new rule in the course of an adjudicatory proceeding, contrary to the rule-making provisions of the Administrative Procedures Act of 1969. MCL 24.201 *et seq.;* MSA 3.560(101) *et seq.* MCL 24.207; MSA 3.560(107) defines a rule as an agency regulation, statement, standard, policy, ruling, or instruction of general applicability, which implements or applies law enforced or administered by the agency or which prescribes the organization procedure, or practice of the agency. MCL 24.241; MSA 3.560(141) sets forth elaborate procedures for promulgating any agency rules. Expressly excluded from the definition of administrative rule is

[2] According to respondents' brief on appeal, the commission did appoint a fact finder on October 17, 1983, who conducted hearings in 1983 and 1984 and issued findings in May of 1984. Two more tentative agreements were reached on September 3, 1984, and on December 1, 1984, both of which were rejected by AFSCME membership.

a "determination, decision or order in a contested case." MCL 24.207(f); MSA 3.560(107)(f).

It is impossible to promulgate specific administrative rules in anticipation of every conceivable situation prior to the enforcement of a statute. *Thompson v Dep't of Corrections,* 143 Mich App 29, 32-33; 371 NW2d 472 (1985), conflicts order denied, 422 Mich 1238 (1985). An administrative agency may thus announce new principles of law through adjudicative proceedings in addition to doing so through its rule-making powers. *DAIIE v Comm'r of Ins,* 119 Mich App 113, 117; 326 NW2d 444 (1982), lv den 417 Mich 1077 (1983). The effective administration of a statute by an administrative agency cannot always be accomplished through application of predetermined general rules. Rather, some principles of interpretation must evolve in response to actual cases in controversy presented to the agency. An administrative agency must therefore have the authority to act either by general rule or by individual order. *SEC v Chenery Corp (Chenery II),* 332 US 194, 202; 67 S Ct 1575; 91 L Ed 1995 (1947), reh den 332 US 783; 68 S Ct 26; 92 L Ed 367 (1947). See also *American Way Life Ins Co v Comm'r of Ins,* 131 Mich App 1, 5-6; 345 NW2d 634 (1983), lv den 419 Mich 937 (1984). The decision of an agency to promulgate law through rule-making or through adjudication rests within the sound discretion of that agency even where a rule breaks from past decisions or where previously established rules are reconsidered. *NLRB v Bell Aerospace Co,* 416 US 267, 294-295; 94 S Ct 1757; 40 L Ed 2d 134 (1974), dicta overruled in *NLRB v Hendricks Co Rural Electric Membership Corp,* 454 US 170, 186-188; 102 S Ct 216; 70 L Ed 2d 323 (1981).

In our view, the commission did not abuse its discretion when it adopted, in this adjudicative

proceeding, a rule prohibiting employers from implementing unilateral changes in mandatory subjects of bargaining where mediation fact-finding has been initiated. In fact, the "rule" announced by the commission may not be as inflexible as respondents claim it to be and the commission may wish to work out its precise contours in future adjudicative proceedings.

Not only do we reject respondents' challenges to the commission's ruling in this case, we further point out that the commission's decision is consistent with the fundamental purpose of PERA, which is to create a balance between the public employer and the public employee in the matter of labor-management relations in order to foster an equitable adjustment of interests and to ensure fundamental fairness to all concerned. See *Lake Michigan College Federation of Teachers v Lake Michigan Community College,* 390 F Supp 103 (WD Mich, 1974), rev'd on other grounds 518 F2d 1091 (CA 6, 1975), cert den 427 US 904; 96 S Ct 3189; 49 L Ed 2d 1197 (1976); *Portage, supra.* Moreover, the Michigan Legislature has properly delegated to the commission the task of implementing PERA and we accord great deference to that agency's interpretation of the statutory provisions it has been entrusted to enforce. See *Wardlow v Great Lakes Express Co,* 128 Mich App 54, 64; 339 NW2d 670 (1983), lv den 419 Mich 871 (1984); *Michigan Life Ins Co v Comm'r of Ins,* 120 Mich App 552, 558; 328 NW2d 82 (1982), lv den 417 Mich 1077 (1983). We are not persuaded that the commission committed any errors of law in finding an unfair labor practice under the circumstances of this case.

Respondents also challenge the commission's retroactive application of the rule announced in this case. This was a significant issue considered below, as evidenced by the commission's decision

to allow the parties to attempt their own resolution of the issue of relief. In its supplemental decision and order of March 29, 1985, the commission pointed out that, as a general rule, a new rule of law applies both to the case in which it arises and to all pending cases. The commission further noted that retroactivity must be balanced against the mischief of providing a result contrary to statutory design or to legal and equitable principles.

The commission then stated that, while the holding of its earlier decision in this case in some sense involved a "new rule," that rule did not overrule established principles of law but rather extended the law in a way which could reasonably have been anticipated by the respondents. The commission concluded that respondents' implementation of its last best offer was inconsistent with the statutory scheme and with its duty to bargain in good faith. Respondents' actions were prompted instead by significant fiscal concerns which did not relieve the public employer of its legal obligation to continue the former agreement. Since the commission accepted respondents' claims of financial distress, there was no need to conduct further hearings on this issue.

We cannot say that the commission erred as a matter of law or abused its discretion in ordering retroactive relief in this case. We find it significant that MERC did not decide the matter in its original decision and order but rather took whatever time was necessary to consider any implications of its order of relief. The careful reasoning set out in the supplemental opinion cannot be characterized as arbitrary, capricious or an abuse of discretion. It is apparent that the commission conscientiously balanced the competing equities and reached a result best effectuating the goals of PERA.

On cross-appeal, AFSCME objects to that portion of the decision limiting the monetary relief retroactively available to its membership to the period commencing May 30, 1984, and ending July 30, 1984. In its supplemental opinion, the commission reasoned that the employees were to be made whole only for those monetary losses resulting from respondents' unlawful unilateral action up to the date on which the respondents' could have lawfully implemented their "last best offer." The commission then reasoned that the parties had a "reasonable time" after the submission of the fact finder's report within which to negotiate an agreement. It was concluded that a reasonable time was sixty days after the date of the fact finder's report which was issued on May 5, 1984. While it is true that neither PERA nor the labor mediation act provides specific limits on the number of days which must pass after fact-finding before the public employer may unilaterally implement its last best offer, we find the commission's solution in this case reasonable and within the purview of its particular administrative competence.

Affirmed.