WAYNE COUNTY GOVERNMENT BAR ASSOCIATION v WAYNE
COUNTY

Docket No. 99613. Submitted May 19, 1988, at Detroit. Decided June
21, 1988.

> The Wayne County Government Bar Association, the collective
> bargaining agent of nonsupervisory attorneys employed by
> Wayne County, filed an unfair labor practice charge with the
> Michigan Employment Relations Commission against Wayne
> County and the Wayne County Board of Commissioners. The
> association charged that respondents, following the expiration
> of a collective bargaining agreement between the parties which
> had provided for the quarterly payment of a cost-of-living
> allowance based on the Consumer Price Index and while negoti-
> ations over future COLA payments were ongoing, violated the
> public employment relations act by setting COLA payments
> based on the CPI on the date of the collective bargaining
> agreement's expiration instead of the CPI for the quarter in
> which payment was made as required by the expired collective
> bargaining agreement. A hearing referee found in favor of the
> association and the MERC issued a decision and order consistent
> with the referee's finding. Respondents appealed.
>
>   The Court of Appeals *held:*
>
>   1. The payment of a cost-of-living allowance pursuant to the
> terms of a previous or expired collective bargaining agreement
> between a public employer and its employees is a mandatory
> subject of collective bargaining within the meaning of PERA
> where, as here, such payment was periodic, established by a
> formula and had a significant impact on the employees' wages,
> hours and other terms and conditions of employment. Unilat-
> eral action on a mandatory subject of bargaining absent an
> impasse in negotiations constitutes an unfair labor practice.
> Respondents therefore must make COLA payments based on the
> CPI in each quarter of payment instead of the CPI on the
> expiration date of the collective bargaining agreement.
>
>   2. The association, contrary to respondents' assertion, did not

REFERENCES

Am Jur 2d, Labor and Labor Relations §§ 1764 *et seq.*, 1790, 1791.
See the Index to Annotations under Labor and Labor Relations.

clearly and unmistakably waive its right to bargain over COLA payments.

Affirmed.

1. LABOR RELATIONS — APPEAL — EMPLOYMENT RELATIONS COMMISSION.

Findings of fact by the Michigan Employment Relations Commission are to be upheld on appeal when such findings are supported by competent, material, and substantial evidence; the Court of Appeals may review the law involved in a dispute regardless of the factual findings of the commission.

2. LABOR RELATIONS — PUBLIC EMPLOYMENT — MANDATORY SUBJECTS OF BARGAINING.

A public employer is charged with the duty to bargain in good faith at the expiration of a labor contract pursuant to a proposed new contract with respect to "mandatory subjects" of bargaining such as wages, hours, and other terms and conditions of employment (MCL 423.215; MSA 17.455[15]).

3. LABOR RELATIONS — PUBLIC EMPLOYMENT — MANDATORY SUBJECTS OF BARGAINING — UNFAIR LABOR PRACTICES — UNILATERAL ACTION.

Wages, hours and other terms and conditions of employment established by a contract between a public employer and its employees which are "mandatory subjects" of bargaining survive the expiration of the contract by operation of law during the bargaining process regarding a new contract; the public employer has a continuing obligation during the bargaining process on the new contract to apply those wages, hours, and other terms and conditions of employment so designated as mandatory subjects of bargaining until such time as an impasse is reached in the bargaining process; neither party may take unilateral action on a mandatory subject of bargaining absent an impasse in negotiations; an employer who takes unilateral action on a mandatory subject of bargaining prior to impasse in negotiations commits an unfair labor practice (MCL 423.210[1][e], 423.215; MSA 17.455[10][1][e], 17.455[15]).

4. LABOR RELATIONS — PUBLIC EMPLOYMENT RELATIONS ACT — MANDATORY SUBJECTS OF BARGAINING — COST-OF-LIVING ALLOWANCES.

The payment of a cost-of-living allowance is a mandatory subject of bargaining pursuant to the public employment relations act where such payment was periodic, established by a formula and had a significant impact on wages, hours and other terms and conditions of employment under a previous or expired collective

bargaining agreement between the parties (MCL 423.201 *et seq.*; MSA 17.455[1] *et seq.*).

*Sachs, Nunn, Kates, Kadushin, O'Hare, Helveston & Waldman, P.C.* (by *George H. Kruszewski*), for the charging party.

*Samuel A. Turner,* Corporation Counsel, and *N. McKinley Tounsel,* Assistant Corporation Counsel, for respondents.

Before: H. Hood, P.J., and Cynar and R. B. Burns,* JJ.

Per Curiam. Respondents, Wayne County and the Wayne County Board of Commissioners, appeal as of right from a decision of the Michigan Employment Relations Commission. The MERC had ordered respondents to make cost-of-living-allowance (COLA) payments to the members of the Wayne County Government Bar Association based upon current inflation statistics rather than the statistics existing at the expiration of the parties' collective bargaining agreement.

The association represents a bargaining unit which consists of nonsupervisory attorneys who are employed by the county. The most recent collective bargaining agreement between the county and petitioner was effective by its terms from December 1, 1982, to November 30, 1984.

The agreement contained the following relevant provisions:

TERM OF AGREEMENT

This Agreement shall be effective on the 1st day of December, 1982, and shall remain in full force and effect until the 30th day of November, 1984.

---

* Former Court of Appeals judge, sitting on the Court of Appeals by assignment.

This Agreement shall continue in effect, in whole or in part, for consecutive yearly periods after November 30, 1984, unless notice is given, in writing, by either the ASSOCIATION or the EMPLOYER, to the other party at least sixty (60) days prior to November 30, 1984, or any anniversary date thereafter, of its desire to modify, amend or terminate this Agreement, or any part thereof.

If such notice is given, this agreement shall be open to modification, amendment or termination, as such notice may indicate, on November 30, 1984, or on the subsequent anniversary date, as the case may be.

Further, it is mutually agreed that, on December 1, 1983, at the sole option of the ASSOCIATION, the provisions in this agreement as to salaries may be reopened for the purpose of negotiating an adjustment of the salaries of the employees covered under this agreement. It shall be the duty of the EMPLOYER and the ASSOCIATION to bargain in good faith.

\* \* \*

COST-OF-LIVING-ALLOWANCE

Employees covered by this Agreement shall be entitled to receive a cost-of-living allowance. Payment of such cost-of-living allowance shall be made quarterly during the term of this Agreement. Payments shall be based upon the geographic Consumers Price Index, as established by the Bureau of Labor Statistics for the Detroit Metropolitan area, using the Index as of January 1, 1973 (128.3) as the base. For each .4 increase in the average Index for the quarter, employees shall receive $.01 per hour for each credited payroll hour during the quarterly period. Payment of the cost-of-living allowance shall be made not later than thirty (30) days following the receipt of the official Index figures for the quarter from the Bureau of Labor Statistics.

It is further agreed by the parties to this Agreement that on July 1, 1983, the EMPLOYER shall, in

accord with the terms of this Agreement, adjust the salary of all classes of employees covered by this Agreement to provide for a fold-in of the total accumulated allowance for c.o.l.a. as of January 1, 1983. It is further agreed by the parties to this Agreement that thereafter the EMPLOYER may limit the amount of c.o.l.a. to be accumulated in any one fiscal year of the County, to Twenty-five cents ($.25) per hour.

After one extension, the agreement was terminated on December 31, 1984. The parties, however, agreed to continue negotiating over annual step increases[1] and COLAs. While negotiations were pending, respondents continued to make quarterly COLA payments. The payments were paid at a rate of $.30 per hour, based upon the Consumer Price Index (CPI) that existed on December 31, 1984. The association maintained that any COLA payments should have been based upon the CPI that was in effect at the end of each quarter in which payments were due. If current statistics had been used, the 1985 first quarter payment would have been $.37 per hour instead of $.30 and the 1985 second quarter payment would have been $.45 per hour rather than $.30.

On October 1, 1985, the association filed an unfair labor practice charge regarding the COLA payments, claiming that respondents had violated sections 10(1)(a) and (e) of the public employment relations act (PERA), MCL 423.210(1)(a) and (e); MSA 17.455(10)(1)(a) and (e), by unilaterally changing the COLA formula. On October 17, 1986, hearing referee Bert H. Wicking issued his decision and recommended order finding in favor of the association. Respondents appealed to the MERC. The MERC issued its decision and order on March

---

[1] The issue of annual step increases was raised below. Respondents do not challenge its determination on appeal.

12, 1987, in which the MERC upheld the referee's decision that COLA payments must be based upon the current CPI in each quarter, and also awarded the association interest. Respondents subsequently appealed to this Court.

Initially, respondents claim that, upon the expiration of the instant collective bargaining agreement, their decision to terminate COLA payments did not constitute a "unilateral" change to the parties' agreement and, hence, respondents did not commit an unfair labor practice.

MERC's findings of fact are upheld if they are supported by competent, material and substantial evidence on the whole record. This Court may review the law regardless of the factual findings of the commission. *Mid-Michigan Education Ass'n (MEA-NEA) v St Charles Community Schools,* 150 Mich App 763, 767; 389 NW2d 482 (1986).

PERA governs labor relations in public employment. *Profitt v Wayne-Westland Community Schools,* 140 Mich App 499, 502; 364 NW2d 359 (1985). At the expiration of a labor contract, a public employer is required to bargain in good faith pursuant to a proposed new contract with respect to "wages, hours, and other terms and conditions of employment." MCL 423.215; MSA 17.455(15).[2] At the expiration of the contract, those

---

[2] This provision of PERA reads:

A public employer shall bargain collectively with the representatives of its employees as defined in section 11 and is authorized to make and enter into collective bargaining agreements with such representatives. For the purposes of this section, to bargain collectively is the performance of the mutual obligation of the employer and the representative of the employees to meet at reasonable times and confer in good faith with respect to wages, hours, and other terms and conditions of employment, or the negotiation of an agreement, or any question arising thereunder, and the execution of a written contract, ordinance or resolution incorporating any agreement reached if requested by either party, but such obligation does

"wages, hours, and other terms and conditions of employment" established by the contract which are deemed "mandatory subjects" of bargaining survive the contract by operation of law during the bargaining process. *Local 1467, International Ass'n of Firefighters, AFL-CIO v Portage*, 134 Mich App 466, 472; 352 NW2d 284 (1984), lv den 422 Mich 924 (1985). Under PERA, unilateral action over mandatory subjects of bargaining may not be taken by either party absent an impasse in negotiations, *Ottawa Co v Jaklinski*, 423 Mich 1, 13; 377 NW2d 668 (1985), or a clear and unmistakable waiver. *Lansing Fire Fighters Union, Local 421, Int'l Ass'n of Fire Fighters, AFL-CIO v Lansing*, 133 Mich App 56; 349 NW2d 253 (1984). An employer who takes unilateral action on a mandatory subject of bargaining prior to impasse in negotiations commits an unfair labor practice. MCL 423.210(1)(e); MSA 17.455(10)(1)(e);[3] *Portage, supra,* p 473. The policy reason against unilateral action prior to impasse serves to foster labor peace and must be liberally construed, especially in light of the ban against striking by public employees set forth in MCL 423.202; MSA 17.455(2). *Id.*

The seminal case on whether a COLA provision is a mandatory subject of bargaining is *Portage.* The issue in *Portage* was whether the employer's duty to continue making COLA payments survived the expiration of the parties' collective bargaining agreement. MERC had concluded that it did not

not compel either party to agree to a proposal or require the making of a concession.

[3] This section states:

It shall be unlawful for a public employer or an officer or agent of a public employer to refuse to bargain collectively with the representatives of its public employees, subject to the provisions of section 11.

because MERC relied on the contractual language "for the life of the agreement." This Court reversed, holding:

> [W]here a COLA provision establishes a practice or policy of making regular COLA adjustments to wages which has a significant impact on the said wages or other conditions of employment so as to be a "mandatory subject" of bargaining, the provision survives the expiration date of the contract during the bargaining process as a matter of law pursuant to PERA. [134 Mich App 474.]

In this case, we find that the COLA provision constituted a mandatory subject of bargaining. Therefore, the provision survived the expiration date of the contract during the bargaining process.

Respondents further argue that the association has contractually waived its rights to bargain over COLA benefits after the expiration date of the agreement. In *MEA-NEA, supra,* p 771, this Court, citing *Lansing Fire Fighters, supra,* p 66, stated that in "order for the union to waive its right to bargain over a term of employment that is a mandatory subject of collective bargaining, the waiver must be 'clear and unmistakable.' "

Again, we must conclude that MERC properly found that the contract language that COLA payments would "be made quarterly during the term of this Agreement" does not amount to a "clear and unmistakable" waiver of the right to bargain over a mandatory subject. We believe that the phrase "clear and unmistakable" should also be liberally construed as is "unilateral action" particularly in light of the prohibition against striking by public employees. If we apply a liberal construction, we find that the language at issue does not constitute a clear and unmistakable waiver of

the right to bargain over a mandatory subject.[4]
Similar language was rejected as being clear and
unmistakable in *Michigan Council 25, AFSCME v
Wayne Co*, 140 Mich App 361; 364 NW2d 690
(1984), lv den 422 Mich 924 (1985), and *Portage,
supra*.

Respondents claim that this Court's decisions in
*Portage* and *AFSCME* were wrongly decided since
the decisions created a "per se rule" or declared
"as a matter of law" that the parties could not by
contract limit their duty to bargain on mandatory
subjects. We do not agree. These decisions held
that, where COLA payments were periodic, estab-
lished by a formula and had a significant impact
on the employees, those benefits would be consid-
ered "wages, hours and other terms and conditions
of employment" within the meaning of MCL
423.215; MSA 17.455(15). *Portage, supra, p 473;
AFSCME, supra*, p 364. These holdings do not
necessarily mean that in every instance where
COLA benefits are provided, they would survive
upon the expiration of a collective bargaining
agreement. This Court has recognized that manda-
tory subjects of bargaining may be waived. See
*Lansing Fire Fighters, supra*, and *MEA-NEA, su-
pra*.

Next, respondents allege that the *Portage* and
*AFSCME* decisions by our Court should be recon-
sidered in light of *Jaklinski, supra*. In *City of
Dearborn*, 1987 MERC Lab Op 61, MERC engaged
in a lengthy discussion of *Jaklinski*. MERC stated
that *Jaklinski* was a suit by the employer to enjoin
arbitration of a discharge grievance after the expi-
ration of the collective bargaining agreement. The
Supreme Court held that, as a matter of contract

[4] A clear and unmistakable waiver would read: "Upon expiration of
the agreement, COLA payments will no longer be made and shall not
be considered mandatory subjects of bargaining."

law, an employer's duty to arbitrate after the expiration of the contract is limited to grievances involving accrued or vested rights.

Our reading of the *Jaklinski* decision compels us to agree with MERC's interpretation of that opinion. In *Jaklinski,* the Court framed the issue as follows:

> The narrow issue in this case is whether the right to grievance arbitration of an unjust discharge claim survives the expiration of the collective bargaining agreement by which it is created. [423 Mich 6.]

Jaklinksi had argued that, because grievance and arbitration procedures constitute mandatory subjects of bargaining, the employer could not unilaterally change these terms prior to impasse. The Court noted that, while grievance and arbitration procedures are mandatory subjects, the parties had reached an impasse when Jaklinski filed her grievance. The Court stated that Jaklinski's claim could only be *contractual* rather than statutory. *Id.,* p 13. It is clear that *Jaklinski* had nothing to do with mandatory subjects of bargaining or the duty to bargain. *Id.,* pp 15-21. Thus, respondents' argument is without merit.

In addition, respondents assert that the federal cases upon which *Portage* was based have been changed so that *Portage* is no longer good law. Respondents allege that, in *Portage,* this Court relied on *OPEIU, Local 186, AFL-CIO v Struthers Wells Corp,* 262 NLRB 136 (1982), modified *Struthers Wells Corp v NLRB,* 721 F2d 465 (CA 3, 1983), in concluding that COLA benefits survived the expiration of a collective bargaining agreement. This claim is totally spurious since in *Portage* there is no reference to the *Struthers Wells* case. More-

over, federal precedent is persuasive and not controlling. *Portage, supra,* pp 472-473, n 3. In addition, *Struthers Wells* did not hold that COLA benefits may never survive the contract's expiration. Instead, the Third Circuit found that the union had waived the right to bargain over COLA, the employer had not made statements which obligated it to pay COLA after the contract had expired, and, based on NLRB precedent, the COLA need not be paid where the calculation date occurs after the contract has expired. *Id.,* p 472. Similarly, in *NLRB v Harvstone Mfg Corp,* 785 F2d 570 (CA 7, 1986), the court found that the employer had not committed an unfair labor practice by eliminating the COLA payments since the union and employer had engaged in bona fide negotiations to impasse. Therefore, elimination of COLA was proper. *Id.,* p 581.

Finally, respondents argue that even if COLA benefits were required to be paid, respondents properly paid them at the rate as it existed upon the contract's expiration. In support of this argument, respondents cite *Mich Council 25, AFSCME v Wayne Co Bd of Comm'rs,* 1984 MERC Lab Op 17, aff'd 140 Mich App 361; 364 NW2d 690 (1984), lv den 422 Mich 924 (1985). In *Wayne Co, supra,* when the contract expired, accumulated COLA benefits were being paid at a rate of $1.86 per hour. However, the union did not argue for a recomputation of the COLA figure for future payments. MERC noted in our case that its holding in *Wayne Co* "was based on the union's request for relief rather than on a specific holding that COLA should be limited to the rate in effect at the expiration of the agreement." Under *Portage, supra,* since it is the COLA formula which constitutes the existing "wages, hours, and other terms and conditions of

employment," respondents were required to compute each COLA payment using the current CPI. Respondents' attempt to apply a different COLA formula than the one required by the contract would constitute unilateral action and hence, an unfair labor practice. Accordingly, we affirm the decision of the MERC.

Affirmed.