**FOX PAINTING COMPANY and Fox Painting and Decorating, Inc., Petitioners and Cross–Respondents,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent and Cross–Applicant.**

Nos. 89–6317, 89–6509.

United States Court of Appeals, Sixth Circuit.

Argued Oct. 4, 1990.

Decided Nov. 16, 1990.

Andrew J. Russell (argued), Smith & Smith, Louisville, Ky., C. Wayne Shepherd, Lexington, Ky., for petitioners and cross-respondents.

Aileen A. Armstrong, Deputy Associate Gen. Counsel, Peter Winkler, Paul Hitterman (argued), N.L.R.B., Office of the Gen. Counsel, Washington, D.C., Andrew L. Lang, N.L.R.B., Region 9, Cincinnati, Ohio, for respondent and cross-applicant.

Before NELSON and NORRIS, Circuit Judges, and HIGGINS, District Judge.*

DAVID A. NELSON, Circuit Judge.

This is an unfair labor practice case involving a "pre-hire" agreement between a construction industry employer and a painters' union. The case, which has been here before, began a decade ago, after the employer repudiated the agreement. The National Labor Relations Board found the repudiation improper and ordered the employer to pay wages lost between the date of the repudiation and the date the employer either reached a new agreement with the union or bargained to impasse. This court granted enforcement of the Board's order.

Several years later, before the amount of backpay that was due had been settled, the Board issued a decision changing the law with respect to pre-hire agreements. Should that decision be deemed applicable to this case, the employer's backpay liability would be cut off as of the scheduled expiration date of the pre-hire agreement. The Board, however, declined to give the new decision retroactive effect in situations where, as here, a court of appeals had already granted enforcement of an order entered under the prior dispensation. The employer has filed a petition for review challenging the Board's position on retroac-

---

* The Honorable Thomas A. Higgins, United States District Judge for the Middle District of Tennessee, sitting by designation.

tivity. The Board has filed a cross-application for enforcement. Because we find that the Board acted within the scope of its delegated authority and did not abuse its discretion in determining the extent to which the new decision is to be given retroactive effect, we shall deny the employer's petition and grant the cross-application of the Board.

## I

### A

In 1982 the Board determined that Fox Painting Company had violated §§ 8(a)(5) and (1) of the National Labor Relations Act, codified at 29 U.S.C. §§ 151 *et seq.*, by unilaterally abrogating a pre-hire agreement negotiated on its behalf by the Painting and Decorating Contractors of America with the International Brotherhood of Painters and Allied Trades of the United States and Canada, Local 768. For a recitation of the pertinent facts, we refer the reader to the decision and order of the Board, reported at 263 N.L.R.B. 437 (1982), and our subsequent decision, reported at 732 F.2d 554 (6th Cir.1984), granting enforcement.

The Board's order directed Fox Painting to reimburse all employees in the relevant bargaining unit for wages lost between May 7, 1980 (the date of repudiation) and such time as the company and the union "reach[ed] an agreement or [a good-faith] impasse." 263 N.L.R.B. at 441. After we granted enforcement of the order, the parties attempted without success to reach agreement on the exact amount of backpay due. One of the Board's regional directors eventually instituted a compliance proceeding pursuant to 29 C.F.R. §§ 102.52 *et seq.* (The compliance specification named both of the parties that are now the petitioners before this court: Fox Painting and its successor in interest, Fox Painting and Decorating, Inc.) At hearings held before an administrative law judge in 1987, the petitioners argued that their liability for backpay should have ended on March 31, 1982, the scheduled expiration date of the pre-hire agreement. As support for their position, the petitioners relied on the Board's then-recent decision in *John Deklewa and Sons,* 282 N.L.R.B. 1375 (1987), enforcement subsequently granted *sub nom. International Association of Bridge, Structural and Ornamental Iron Workers v. NLRB,* 843 F.2d 770 (3d Cir.), *cert. denied sub nom. Deklewa v. NLRB,* 488 U.S. 889, 109 S.Ct. 222, 102 L.Ed.2d 213 (1988).

### B

*Deklewa* marked a significant change in the Board's treatment of labor agreements in the building and construction industry. Section 8(f) of the National Labor Relations Act allows employers and unions in the construction industry to enter into labor agreements without any determination that a majority of the workers potentially affected by the agreements desire representation. Prior to *Deklewa,* these "pre-hire" or "8(f)" agreements were deemed terminable at will; accordingly, an employer that was in breach of such an agreement would not be liable for backpay, nor would the execution of the agreement put the employer under any continuing duty to recognize or bargain with the union. See *Deklewa,* 282 N.L.R.B. at 1378. In a series of decisions rendered before *Deklewa,* however, the Board developed a "conversion" doctrine under which, if the union could show that it enjoyed majority support, an 8(f) agreement could be transformed into a conventional labor agreement enforceable throughout its term and implying a duty to bargain thereafter. What *Deklewa* did was to abolish the conversion doctrine.

*Deklewa* also held that pre-hire agreements would no longer be deemed terminable at will. An employer who repudiated an 8(f) agreement could therefore be held liable for backpay up to the contract's expiration date. Beyond that point the old § 8(f) rules would govern, the employer could not be held liable for post-expiration wages, and there would be no duty to bargain. *Id.* at 1384–1387.

Addressing the issue of retroactivity, the Board said in *Deklewa* that it would follow its "usual practice of retroactive applica-

tion." This meant that the new holding would apply to "all pending cases in whatever stage." *Id.* at 1389 (citations omitted).

### C

The petitioners argue, in effect, that because the compliance proceeding against them was pending when *Deklewa* was decided, this is one of the "pending cases" to which *Deklewa*, by its own terms, applies. The Board rejected this contention, citing its decision in *Dependable Tile*, 292 N.L.R.B. No. 116 (1989). *Dependable Tile* held that in a bifurcated unfair labor practice case—where proceedings to determine liability are held first, with proceedings to calculate backpay following if liability is established—*Deklewa* would not be applied retroactively in those situations where a finding of liability had already been approved by an appellate court. *Id.*, slip op. at 2.

Applying pre-*Deklewa* law, the Board calculated that the petitioners owed $162,-754.74 in backpay, plus interest. Shortly after the issuance of a decision and order directing them to pay this amount, the petitioners filed their petition for review. The Board then filed its cross-application for enforcement.

### II

■ When the Board announces a new rule of law, it has wide discretion to determine whether and to what extent the new rule will be applied retroactively. As we stated in *Hickman Harbor Service v. NLRB*, 739 F.2d 214, 218 (6th Cir.1984), "[u]nless manifest injustice can be shown, the Board's judgments on retroactivity should be upheld."

■ In the typical case, we are asked to determine whether "manifest injustice" is caused by a Board decision *requiring* retroactivity. Our usual course in such a situation is to weigh the following three factors: (1) the reliance of the parties on preexisting law; (2) the effect of retroactivity on accomplishing the purpose of the law; and (3) any injustice arising from retroactive application. *Adair Standish*

*Corp. v. NLRB*, 912 F.2d 854, 866 (6th Cir.1990). Essentially, we try to assess the relative weight of the burden that retroactivity would entail, on the one hand, and the Board's interest in a uniform application of its new rule on the other hand.

■ The instant case is atypical in that here the Board has *declined* to apply a new rule retroactively. Nevertheless, we must still try to balance the reasoning behind the Board's decision "against the mischief of producing a result which is contrary to a statutory design or to legal and equitable principles." *Securities & Exchange Commission v. Chenery Corp.*, 332 U.S. 194, 203, 67 S.Ct. 1575, 1581, 91 L.Ed. 1995 (1947).

■ Having weighed the relevant factors, we cannot say that the Board's decision results in manifest injustice. The Board's rationale is simple but strong: the rule set forth in *Dependable Tile* prevents the wasteful relitigation of issues already settled by an appellate court. We see nothing in the *Dependable Tile* rule that is contrary to the purposes of the National Labor Relations Act or to "legal and equitable principles" in general. The Board does not seem to be acting arbitrarily; the petitioners have pointed to no case—nor has our own research disclosed any—in which the Board has applied *Deklewa* in a manner inconsistent with *Dependable Tile*. (There are cases in which *Deklewa* was applied retroactively, to be sure, but these involved disputes that were pending before the Board either for the first time or on remand after an appellate court had *declined* to enforce a Board order.)

■ It is important, finally, to understand the context in which the phrase "all pending cases in whatever stage" was used in the decision from which *Deklewa* borrowed it. The phrase comes from *Deluxe Metal Furniture Co.*, 121 N.L.R.B. 995 (1958), where the Board explained that applying a new rule retroactively affects

"not only ... the case in which such revisions are first announced and applied, but also ... any other case which has not yet been decided, *because it has*

*not reached the Board's level or is at one of the other stages of the administrative process such as the hearing."* *Id.* at 1006. (Emphasis supplied.)

Given its context, the Board's use of the phrase in question does not obligate the Board to apply *Deklewa* to cases in the posture of this one.

Accordingly, the petition for review is DENIED, and the Board's cross-application for enforcement is GRANTED.