**BOARD OF TRUSTEES OF
the UNIVERSITY OF
MAINE SYSTEM**

v.

**ASSOCIATED COLT STAFF OF the
UNIVERSITY OF MAINE SYSTEM
and Maine Labor Relations Board.**

Supreme Judicial Court of Maine.

Argued Nov. 2, 1994.

Decided May 26, 1995.

Bruce Smith, Harry Pringle, Drummond, Woodsum, & MacMahon, Portland, for amicus curiae.

Judith A. Dorsey (orally), Maine Labor Relations Bd., Augusta, Shawn C. Keenan (orally), Maine Teachers Ass'n, Augusta, for defendants.

Timothy Belcher, Maine State Employees Ass'n, SEIU Local 1989, Augusta, for amicus curiae.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN, DANA and LIPEZ, JJ.

CLIFFORD, Justice.

■ The Associated COLT Staff of the University of Maine System (ACSUM)[1] and the Maine Labor Relations Board (Board) appeal from a judgment of the Superior Court (Kennebec County, *Alexander, J.*) vacating the Board's decision that the University of Maine System (University) breached its duty to bargain in good faith by discontinuing the annual step increase in wages included as a wage provision in the collective bargaining agreement that had expired. The requirement to bargain and negotiate in good faith includes the obligation to maintain the status quo following the expiration of a contract.[2] Applying a "dynamic" status quo rule that it had adopted after the contract had been entered into, the Board imposed on the University a duty to continue paying to its employees the annual step increases in wages included in the expired agreement. The Board concluded that the failure of the University to do so constituted a unilateral change in the status quo prohibited under the law. Beyond the particular unfairness of the application of the dynamic status quo rule retroactively to the facts of this case, such application requires the University to pay wage increases not collectively bargained for and not approved by the University, and thus violates the letter and spirit of the

Catherine O'Connor (orally), Bernstein, Shur, Sawyer & Nelson, Kennebunk, for plaintiff.

1. ACSUM, an affiliate of the Maine Education Association and the National Education Association, is the bargaining agent for the bargaining unit of clerical, office, laboratory, and technical (COLT) employees of the University of Maine System.

2. This widely accepted rule is premised on the need to prevent either party from circumventing their statutory obligation by making a unilateral change in existing wages, hours, or working conditions. *See Lane v. Board of Directors of M.S.A.D. No. 8,* 447 A.2d 806, 810 (Me.1982).

Public Employee Labor Relations Law. Accordingly, we affirm the Superior Court.

The University and ACSUM had a collective bargaining agreement of three years' duration, commencing in 1989, and expiring on June 30, 1992. The agreement contained separate wage scales with an across-the-board increase for each year of the contract. The wage schedule for each year was divided into wage bands for different levels of employment, and each band included six to eight steps based on seniority. The agreement provided that on each of the anniversary dates of the agreement, employees would advance from one lettered step to the next and receive the specified increase in wages. When the agreement expired, the University adhered to the last wage schedule, and discontinued the annual step increases, except as they applied to promotions.

■ In December 1992, ACSUM filed a prohibited practice complaint with the Board, alleging that the University violated the University of Maine System Labor Relations Act, 26 M.R.S.A. §§ 1021–1035 (1988 & Supp. 1994).[3] After a hearing, the Board ruled that the discontinuance of the payment of salary step increases after the expiration of the collective bargaining agreement constituted a unilateral change in the conditions of employment in violation of the University's duty to bargain pursuant to 26 M.R.S.A. § 1027(1)(A) and (E). The Board ordered the University to continue to advance each employee one step higher on the existing wage scale annually, until the parties agree otherwise or bargain in good faith to impasse.[4] In addition, the Board ordered the University to reimburse employees for the wages and interest lost as a result of the delay in granting the first increase following the expiration of the contract.

The University filed a petition for review of final agency action with the Superior Court pursuant to 26 M.R.S.A. § 1029(7) and M.R. Civ.P. 80C. The Superior Court concluded that the Board's decision was "an improper imposition into the substance of collective bargaining processes" and vacated the Board's decision. This appeal by the Board and ACSUM followed.

■ We review the Board's decision directly, *State v. Maine State Employees Ass'n*, 538 A.2d 755, 757 (Me.1988), for error of law, abuse of discretion, or clear error. *See City of Bangor v. American Fed'n of State, County & Mun. Employees*, 449 A.2d 1129, 1134, 1136–37 (Me.1982); 26 M.R.S.A. § 1029(7).

■ Pursuant to the University of Maine System Labor Relations Act, the University is required to bargain and negotiate in good faith. *See* 26 M.R.S.A. §§ 1026(1)(C), 1027(1)(A), (E). That requirement includes the obligation to maintain the status quo following the expiration of a contract. *See Lane v. Board of Directors of M.S.A.D. No. 8*, 447 A.2d 806, 809–10 (Me.1982) (employer may not unilaterally alter terms and conditions of employment after expiration of collective bargaining agreement).

The definition of status quo at the expiration of the collective bargaining agreement is at the crux of this case. Until 1991, the Board had construed status quo to mean that wages existent at the expiration of a collective bargaining agreement were frozen. In doing so, the Board rejected the notion that increases in wages scheduled in the expired contract should be extended beyond the expiration of that contract. *M.S.A.D. No. 43 Teachers' Ass'n v. M.S.A.D. No. 43 Bd. of Directors*, 432 A.2d 395, 397–98 (Me.1981). In *M.S.A.D. No. 43*, we agreed that the application of a static status quo rule to collective bargaining was appropriate.

"To say that the *status quo* must be maintained during negotiations is one thing; to say that the *status quo* includes a change and means automatic increases in salary is another. The matter of increments can be negotiated and, if it is agreed that such increments can and should be

---

**3.** The Act is similar in all material aspects to the Municipal Public Employees Labor Relations Law, 26 M.R.S.A. §§ 961–974 (1988 & Supp. 1994).

**4.** A public sector employer may not make unilateral changes in employment conditions after the expiration of a collective bargaining agreement until impasse has occurred.

paid, provision can be made for payment retroactively."

*Id.* at 397 n. 3 (quoting *Board of Coop. Educ. Servs. v. New York State Pub. Employment Relations Bd.*, 41 N.Y.2d 753, 395 N.Y.S.2d 439, 442, 363 N.E.2d 1174, 1177 (1977)).

■ In 1991, the Board reversed its previous position and adopted what is known as the dynamic status quo rule, thereby requiring public employers to pay their employees any annual step increases in wages included in an agreement that expired. *Auburn Sch. Adm'rs Ass'n v. Auburn Sch. Comm.*, No. 91–19 (Me. L.R.B. Oct. 8, 1991), *consolidated appeals dismissed per stipulation*, No. CV–91–459 & –464 (Me. Sup.Ct., And. Cty., Apr. 24, 1992).

■ To apply the dynamic status quo rule to the circumstances of this case, and require the University to pay increases in wages in an expired collective bargaining agreement that was negotiated at a time when the Board was applying a different status quo rule is particularly unfair. The parties negotiated this contract with the understanding that during any interim period following the expiration of the contract, wages would be frozen and maintained at the level existing on the date of expiration. *See M.S.A.D. No. 43*, 432 A.2d at 397–98. The Board's subsequent departure from many years of precedent disregards the parties' reliance on the prior rule, and places on the University the burden of funding wage increases not budgeted for. *See generally Ryan Heating Co. v. NLRB*, 942 F.2d 1287, 1289 (8th Cir.1991) (discussing factors that affect determination whether to apply NLRB decision retroactively); *Fox Painting Co. v. NLRB*, 919 F.2d 53, 56 (6th Cir.1990) (discussing factors).

■ Beyond the unfairness of the dynamic status quo rule's application in this case, however, is its contravention of the statutory language and the legislative history of Maine's public employment labor relations law. The very section imposing the duty to negotiate in good faith, and thus to maintain the status quo when a contract expires, provides "except that by such obligation [to negotiate] neither party shall be compelled to agree to a proposal or be required to make a concession." 26 M.R.S.A. § 1026(1)(C). The payment of wages can have an "enormous impact" on the University's budget, *see City of Biddeford v. Biddeford Teachers Ass'n*, 304 A.2d 387, 413 (Me.1973), and constitutes a substantial concession by the University in direct contravention of the prohibition contained in section 1026(1)(C). *Caribou Sch. Dep't v. Caribou Teachers Ass'n*, 402 A.2d 1279, 1285–86 (Me.1979) (Board has no authority to impose duty on public employer to pay wage increases not agreed to); *see also Appeal of Milton Sch. Dist.*, 137 N.H. 240, 625 A.2d 1056, 1058–59 (1993) (Board has no authority to require district to pay "cost items" not approved by town).

■ Other provisions in the statute make clear that the Legislature was careful to protect the public fisc from wage increases that were neither bargained for nor approved by the public employer. Although the law provides for binding arbitration as the preferred method of settling disputes when negotiation fails, the Legislature specifically excluded salaries, pensions, and insurance from binding arbitration.[5] Arbitrators may only recommend, and not bind the parties, as to salaries and pensions in Maine. 26 M.R.S.A. § 1026(4)(B); *see Caribou Sch. Dep't*, 402 A.2d at 1286 n. 8 & 1287. Contrary to this proposition, however, the Board effectively has constrained the University to accept an increase in salaries.

■ The static status quo rule is consistent with the Legislature's clearly expressed intent to protect municipal and state

5. The legislative history makes clear why the Legislature determined it important to protect public employers from forced concessions.

Now the Committee [that studied public employee collective bargaining and recommended enactment of the statute] at first wanted to make all arbitration compulsory including wages but it was pointed out that in many instances this would be giving the power to three persons to actually set the tax rates in cities and towns and then if the town meeting didn't approve this they would be in a real mess because they wouldn't have the funds to pay their employees. So the proposal before you says that the arbitration will be compulsory except for salaries, pensions and insurance. 2 Legis.Rec. 2933 (1969) (statement of Rep. Ross).

agency budgets from increases in wages imposed without agreement by the governing body.[6] The recently adopted dynamic status quo rule, on the other hand, obligates the University to pay substantial increases in wages not approved by its trustees, and dramatically alters the status and bargaining positions of the parties. It changes, rather than maintains, the status quo. Although the dynamic status quo rule may be utilized in private sector labor law, and in some public sector labor law, its adoption by the Board is contrary to the intent of Maine's public employer labor statute as expressed in its plain language and history. *See State v. Maine State Employees Ass'n*, 499 A.2d 1228, 1232 (Me.1985) (language and intent of state law, as opposed to NLRB doctrine, govern construction of State Employees Labor Relations Act). Accordingly, deference to the Board's newfound construction is not warranted. *See Violette v. Leo Violette & Sons, Inc.*, 597 A.2d 1356, 1357 (Me.1991).

The entry is:

Judgment affirmed.

ROBERTS, RUDMAN, and DANA, JJ., concurring.

WATHEN, Chief Justice, with whom GLASSMAN and LIPEZ, Justices, join, dissenting.

The duty to bargain in good faith requires employers and employees to maintain the status quo with respect to conditions of employment until an agreement is achieved or they reach an impasse. The preservation of the status quo prevents either party from circumventing their statutory obligation to bargain by making unilateral changes in existing wages, hours, or working conditions.

Two rules have been applied when a collective bargaining agreement expires with no new agreement in place. The "static status quo rule" would require and permit public employers to pay only those wages in effect when the agreement expired, unless the agreement provides otherwise. The "dynamic status quo rule," however, would require and permit a public employer to pay wages according to the wage plan of the expired agreement, including any scheduled step increases. The Maine Labor Relations Board has concluded that the University's withdrawal of the step increases specified in the existing wage provisions constitutes a unilateral change in wages. I reject the Court's conclusion that the Board's adoption of the "dynamic rule" is inconsistent with the intent, plain language, and history of Maine's public sector labor law. I respectfully dissent.

### I. Authority of the Board

The initial question before us relates to the Board's statutory authority to find that a change in the conditions of employment occurred when the University unilaterally discontinued the existing schedule of annual step increases. The Board has consistently tracked private sector labor law in ruling that the duty to confer and negotiate in good faith imposes an ancillary duty to maintain the status quo during negotiations until a new agreement is reached, or impasse occurs. *Mountain Valley Educ. Ass'n v. Maine Sch. Admin. Dist. No. 43*, 655 A.2d 348, 351–52 (Me.1995); *Lane v. Board of Directors of Me. Sch. Admin. Dist. No. 8*, 447 A.2d 806, 809–10 (Me.1982). *See also NLRB v. Katz*, 369 U.S. 736, 743, 82 S.Ct. 1107, 1111, 8 L.Ed.2d 230 (1962) (holding that

**6.** Furthermore, since the enactment of the public employee labor relations statute, the Legislature has rejected numerous attempts to amend the law to make salaries, pensions, and insurance the subject of binding arbitration. *See, e.g.,* An Act to Include Salaries, Pensions and Insurance for Binding Arbitration under the Municipal Public Employees Labor Relations Law, L.D. 469 (107th Legis.1975), An Act to Include Salaries, Pensions and Insurance for Binding Arbitration under the Municipal Public Employees Labor Relations Law, L.D. 365 (108th Legis.1977); An Act to Include Salaries, Pensions and Insurance for Binding Arbitration under the Municipal Pub-

lic Employees Labor Relations Law, L.D. 761 (111th Legis.1983); An Act to Amend the Municipal Employees Labor Relations Law, L.D. 337 (113th Legis.1987); An Act to Include Salaries, Pensions and Insurance for Binding Arbitration Under the Municipal Public Employees Labor Relations Law, L.D. 798 (114th Legis.1989); *cf. Appeal of Milton Sch. Dist.*, 625 A.2d at 1060 (longstanding practical and plausible interpretation of statute by agency responsible for implementation without interference from legislators is evidence that administrative interpretation conforms to legislative intent).

an employer's unilateral change in wages and sick leave policy under negotiation violates the National Labor Relations Act because it is a circumvention of the duty to negotiate); *Litton Fin. Printing v. NLRB*, 501 U.S. 190, 198, 111 S.Ct. 2215, 2221, 115 L.Ed.2d 177 (1991) ("The *Katz* doctrine has been extended as well to cases where, as here, an existing agreement has expired and negotiations on a new one have yet to be completed."); *NLRB v. Allied Prod. Corp.*, 548 F.2d 644, 653 (6th Cir.1977) ("The Act is violated by a unilateral *change* in the existing wage structure whether that change be an increase or the denial of a scheduled increase.")

In 1979, in *Easton Teachers Ass'n v. Easton Sch. Comm.*, No. 79–14, at 7 (Me. L.R.B. Mar. 13, 1979) the Board's first applied the "static status quo" rule to post-expiration wages.[1] Under this rule, the status quo is maintained after contract expiration by freezing *wages* at the level they were when the contract expired. *Id.* The Board expressly noted in *Easton* that it preferred a static view of the status quo as opposed to the dynamic view. *Id.* Shortly thereafter, however, in a case involving the University, the Board refused to apply the "static" rule to a wage dispute during negotiations for an initial contract, instead adopting the "dynamic" rule for this situation. *Teamsters Local Union No. 48 v. University of Me.*, No. 79–08 (Me. L.R.B. June 29, 1979), *appeal dismissed for lack of prosecution*, No. CV–79–406 (Me.Super.Ct., Ken.Cty., Dec. 30, 1981). The Board explained the reasons for this different treatment. First, in the pre-contract period, there "could be no understanding or agreement on a termination date at which point wage levels might be frozen in the future." Second, the Board pointed out that it can take years to negotiate an initial contract, and employers could enjoy a windfall if automatic wage escalator provisions could be terminated on certification of a bargaining agent. *Id.* at 5.

In 1991, two years before the decision in this case, the Board reversed itself completely and adopted the "dynamic" rule for post-expiration wages. The Board offered the following explanation:

> Why should the terms and conditions in a contract provision, however it is drafted, be frozen upon contract expiration for health insurance and other terms and conditions of employment, but not when that contract provision contains a wage escalator? . . .
>
> . . . .
>
> After careful consideration, we conclude that *Easton* must be overturned, to the extent that it treats wage escalator provisions of an expired contract differently than it treats other provisions. We find the following principle, stated in *Easton* itself, to be a sound approach to the issue of maintaining the status quo, which principles should be applied consistently:
>
> > In essence, there is no difference between collective bargaining for an initial agreement, during which all existing terms and conditions of employment are frozen until proposed changes have been fully negotiated, and collective bargaining for subsequent agreements, during which existing terms and conditions of employment (as embodied in a prior agreement) are again frozen until proposed changes have been fully negotiated.

*Auburn Sch. Adm'rs Ass'n v. Auburn Sch. Comm.*, No. 91–19, at 20–21 (Me.L.R.B. Oct. 8, 1991), *consolidated appeals dismissed per stipulation*, No. CV–91–459 and –464 (Me.Super.Ct., And.Cty., Apr. 24, 1992). The new "dynamic" rule is in accord with pre-contract wage treatment and also with the Board's treatment of health insurance. *See id.* at 19–21. Consistent with the "dynamic" rule applied in *Teamsters* and *Auburn*, the Board noted in the present case that "it is the *wage provision* that is frozen, not *wages* themselves." (Emphasis added.)

The University challenges the Board's decision and argues that the parties agreed to freeze *wages* at the expiration of the agree-

---

1. The fact that we affirmed the prior "static status quo" rule, *M.S.A.D. No. 43 Teachers' Ass'n v. M.S.A.D. No. 43 Bd. of Directors*, 432 A.2d 395 (Me.1981), does not suggest that the Board was required to use that rule. Rather, it simply indicates that the Board properly could apply the "static" rule to public employment law.

ment pending a successor agreement, "because that was the law [in 1989] when the Agreement was executed." Although, for purposes of constitutional analysis, we have held that contracts are subject to statutes in effect when the contracts are entered into, *see, e.g., Director of Bureau of Labor Standards v. Fort Halifax Packing Co.,* 510 A.2d 1054, 1062 (Me.1986), *aff'd,* 482 U.S. 1, 107 S.Ct. 2211, 96 L.Ed.2d 1 (1987), there is no authority for the proposition that a contract silently incorporates all existing administrative decisions on matters that could have been dealt with expressly. When it executed the agreement, the University may have assumed that the "static" rule would prevail on expiration, but that assumption was dispelled before the agreement expired, and is secured neither in contract nor law. Moreover, the unfairness that the Court finds compelling in this case could have been addressed in the original agreement or could have been the subject of bargaining before the expiration of the agreement.

I reject the University's contention that the Board's order compels the University to implement a wage increase that it never agreed to, in violation of 26 M.R.S.A. § 1026(1)(C) ("neither party is compelled to agree to a proposal or required to make a concession") and our holding in *Caribou Sch. Dep't v. Caribou Teachers' Ass'n,* 402 A.2d 1279 (Me.1979) (finding that the Board, by ordering retroactive payment of wage and benefit increases, was making a contract for the parties, which the Board did not have the authority to do). In a similar vein, the University argues that requiring it to pay higher wages after the agreement expired effectively extends the contract term beyond the three-year limit provided in 26 M.R.S.A. § 1026(1)(D). The Act limits the term of a collective bargaining agreement to three years, but it places no specific time limit on the duty to bargain. The preservation of the status quo is an attribute of bargaining in good faith, and it results in neither an agreement nor a concession. *Mountain Valley,* 655 A.2d at 353. As is well stated by the Associated COLT Staff, the Board has no authority to determine what the parties should be bargaining toward (the final terms of an agreement), but it is empowered to determine what the parties should be bargaining from (the existing terms and conditions of employment).

I disagree with the opinion of the Court that the Board's adoption of the "dynamic" rule is plainly inconsistent with the provisions of the Act. The rule is fashioned from a comparable rule in private sector labor law, *see* Robert A. Gorman, *Basic Text on Labor Law, Unionization and Collective Bargaining* 450 (1976), and refines the prohibition against unilateral change that is universally recognized in collective bargaining in both the private and public sector. *See Mountain Valley,* 655 A.2d at 353. The specific application of the "dynamic" rule in public employment to wage provisions in an expired contract is supported by court and agency decisions in other states.[2] In my view, the Board acted well within its statutory authority.

**2.** *See Vienna Sch. Dist. No. 55 v. Illinois Educ. Labor Relations Bd.,* 162 Ill.App.3d 503, 113 Ill. Dec. 667, 670–71, 515 N.E.2d 476, 479–80 (1987); *Board of Educ. of Springfield Pub. Sch. v. Springfield Educ. Ass'n,* 47 Ill.App.3d 193, 5 Ill. Dec. 374, 378, 361 N.E.2d 697, 701 (1977); *Indiana Educ. Employment Relations Bd. v. Mill Creek Classroom Teachers Ass'n,* 456 N.E.2d 709, 712 (Ind.1983); *Wayne County Gov't Bar Ass'n v. County of Wayne,* 169 Mich.App. 480, 426 N.W.2d 750 (1988); *Local 1467, Int'l Ass'n of Firefighters v. City of Portage,* 134 Mich.App. 466, 352 N.W.2d 284 (1984); *West Cent. Educ. Ass'n v. WERC,* No. 87CV257 (Cir.Ct.Wis. Apr. 22, 1988); *California Sch. Employees Ass'n v. Davis Unified Sch. Dist.,* 4 Pub. Employee Rep. (Cal ed.) (Lab. Rel. Press) ¶ 11031 (Cal.Pub. Empl. Rel. Bd. Feb. 22, 1980); *International Ass'n of Firefighters Local 2416 v. City of Cocoa,* No. CA–88–014, 11 Nat'l Pub. Empl. Rep. (Lab.Rel.Press) FL–19311 (Fla.Pub. Employees Rel. Comm'n Oct. 17, 1988).

The New Hampshire Supreme Court, however, has applied the "static" rule to wage step increases in public employment. *See Appeal of Milton Sch. Dist.,* 137 N.H. 240, 625 A.2d 1056, 1059–61 (1993). Interestingly, the dissent in that opinion would have found the step increases to be part of the status quo to be maintained. *Id.* at 1063–65 (Brock, C.J. & Batchelder, J., dissenting). The Pennsylvania Supreme Court also has applied the "static" rule to public employment wage increases. However, that case arose in the context of unemployment compensation claims, not a prohibited practice complaint. *Fairview Sch. Dist. v. Commonwealth of Pennsylvania Unemployment Compensation Bd. of Review,* 499 Pa. 539, 454 A.2d 517, 520–21 (1982).

## II. *Fiscal Concerns*

Underlying the Court's opinion and running throughout the argument of the University and the brief filed by the Maine School Boards Association as *amicus curiae* is the policy argument articulated by the Superior Court—the Board should not be permitted to require a public employer "caught in difficult economic times to continue to increase wages at rates agreed to when times were better." Implicit within the Superior Court's ruling is the argument that the Board is improperly infringing on "governmental authority and the accountability of public employers to the taxpayer and citizenry." It is true that the Legislature carefully preserved the power of the public employer not to agree. *Mountain Valley,* 655 A.2d at 353. But it is equally true that the same Legislature imposed the duty to bargain, and it is that duty that the Board has interpreted to require the preservation of existing practices until impasse. Unquestionably there are significant fiscal implications involved when a public employer is required to continue a past practice set forth in an expired wage provision or health care plan while bargaining for a new contract. There is a meaningful legal difference, however, between compelling an agreement, and preserving the status quo while the parties are bargaining. *Id.* at 353. It is this distinction that the Act compels.

In an effort to balance the bargaining relationship, the Legislature replaced the right to strike and engage in work stoppages with mediation, factfinding, and arbitration. *See* 26 M.R.S.A. § 1026. In public sector employment, impasse cannot occur until those procedures have been exhausted. *Mountain Valley,* 655 A.2d at 352. If impasse occurs, however, either party is free to institute unilateral change.

It is conceivable that, in a particular case, before reaching impasse the parties may face a delay that exceeds the length of any contract that might be considered. The impasse procedures mandated by the Legislature necessarily involve delay. *See* Raymond G. McGuire & Bryan M. Dench, *Public Employee Bargaining Under the Maine Municipal Public Employees Labor Relations Law: The First Five Years,* 27 Me.L.Rev. 29, 108–

19 (1975). Obviously, the financial consequences resulting from the combination of delay and the requirement of preserving the status quo, whether dynamic or static, are most pronounced in time of financial crisis. In my view, however, such policy concerns are properly matters for legislative consideration rather than a judicially-crafted hardship exception to the duty to bargain. *See* Stephen F. Befort, *Public Sector Bargaining: Fiscal Crisis and Unilateral Change,* 69 Minn.L.Rev. 1221, 1274 (1985) (Public sector bargaining is not "an aberration that need be tolerated only when convenient or when its results are not too painful.")

I would vacate the judgment and remand with instructions to enter an order affirming the decision of the Board.