STATE OF MAINE                         SUPERIOR COURT
KENNEBEC, ss                           CIVIL ACTION
                                       DOCKET NO. AP-11-64
                                       MWM  —KEN— 10/19/2012


CITY OF AUGUSTA,
        Petitioner


v.                                     ORDER ON RULE 80C APPEAL


LOCAL 1650,
        Respondent


Before the Court is the City of Augusta's petition under M.R. Civ. P. 80C to review the

Maine Labor Relations Board's ("the Board") December 15, 2011 Status Quo Determination.

Under the "strict status quo" doctrine, the Board determined that the City must continue to

provide three types of benefits available to certain union members under a collective bargaining

agreement after that agreement expired. The two issues before the Court on review are: (1)

whether the Board had jurisdiction to decide the presented static status quo issue; and (2)

whether it correctly applied the status quo doctrine to the benefits in question.


**Factual and Statutory Background**

Local 1650 ("the Union") is the chief bargaining agent for members of the Augusta Fire

Department. (R. Tab A.) The Union entered into a collective bargaining agreement ("the CBA")

with the City of Augusta ("the City"), which expired on June 30, 2010. (R. Tab A.)

Prior to June 30, 2010, the Union and the City entered into negotiations for a new

contract. (R. Tab A.) On June 10, 2010, David Barrett, an independent contractor hired by the

1

City to negotiate as its representative, signed a document captioned "Ground Rules for Negotiations" ("Ground Rules"). (R. Tab G, C-1.) The Ground Rules contained a provision, known as the "Evergreen Clause," which stated that the current CBA would remain in "full force and effect" if a new agreement had not been reached before its expiration. (R. Tab G, C-1.) The CBA subsequently expired without a new agreement in place on June 30, 2010, but the City chose not to honor certain benefits. Most significantly, the City stated that it would not fulfill the provisions concerning retiree health benefits.[1] (R. Tab H, R-1.) The City claimed that Mr. Barrett was not authorized to bind it with the Evergreen Clause, and that it was not otherwise obligated to continue providing the benefits under the status quo doctrine. (R. Tab H, R-1.)

In response, on August 3, 2010, the Union filed a "Practice Complaint" ("the Complaint") with the Board, alleging that the City had violated its obligation to negotiate in good faith by refusing to honor the Evergreen Clause.[2] (R. Tab A.) The Complaint did not challenge the City's status quo determination, and the allegations contained therein are not the subject of the City's current petition. (R. Tab A.)

On May 11, 2011, the Board held a hearing on the Evergreen Clause issue. (R. Tab I [hereinafter "Tr."].) At that hearing, the Union expressed for the first time that it also wished to expand the focus of the hearing to include a determination of whether the City's status quo ruling was proper.[3] (Tr. 7-8.) Both parties acknowledged that grievances had been filed for arbitration

---

[1] The provision in question requires the City to pay 100% of a firefighter's hospital insurance benefits after retirement if he or she has worked for a certain minimum number of years. (R. Tab G, C-10.)

[2] Prohibited practice complaints, which are filed with the Board, are authorized under 26 M.R.S.A. § 968(5)(B), and § 964(1)(E).

[3] The Union's counsel expressed that, if the Evergreen Clause was found to be unenforceable, the city would "still be under the obligation to maintain the static status quo." (Tr. 7.) Counsel also indicated his intention to introduce evidence to show that the City committed a "unilateral change to the static status quo." (Tr. 8.)

2

concerning the status quo determination, and that they were being held in abeyance pending resolution of the Evergreen Clause issue. (R. Tab M.) Counsel for the City objected to expanding the scope of the hearing to include the status quo determination because he claimed he was not on notice of the issue. (Tr. 8-9.) The hearing chair then halted any further substantive or evidentiary discussion concerning the status quo issue. (Tr. 10.) After the parties had finished presenting on the Evergreen Clause issue, the discussion returned to how to proceed with the status quo question. (Tr. 74.) In response, the parties agreed to brief the legal issue of whether the status quo dispute should be addressed as part of the same proceeding, and, specifically, whether the Board has the jurisdiction to do so under 26 M.R.S.A. § 964-A(2).[4] (Tr. 75-86.)

The parties accordingly submitted briefs on the status quo question. (R. Tab K; Tab L.) The City argued that § 964-A(2) required the Union to pursue any grievances via arbitration. (R. Tab L.) The Union argued that § 964-A(2) conferred jurisdiction on the Board to resolve whether the following three benefits, all denied by the City after the CBA's expiration, were enforceable under the status quo doctrine: (1) the CBA provision guaranteeing certain retiree health benefits; (2) the provision compensating employees for unused sick time; and (3) the provision that compensated employees for unused balances remaining in their annual uniform allowance. (R. Tab K.)

The Board issued a nine-page interim order on August 9, 2011, and determined that § 964-A(2) allowed and even required it to resolve the dispute over whether the benefits in question continued to be enforceable under the status quo doctrine. (R. Tab M.) The Board highlighted the language of § 964-A(2), which provides: "'[d]isputes over which provisions in an expired contract are enforceable by virtue of the static status quo doctrine first must be resolved

---

[4] For full text of the relevant part of 26 M.R.S.A § 964-A(2), see Discussion, page 5, *infra*.

3

by the board,' subject to appeal pursuant to applicable law." (R. Tab M 6.) The Board construed that it has the authority and obligation to determine what the status quo is that must be maintained, and the arbitrator's role is to determine whether there has indeed been a change. (R. Tab M 6.) Thus, the Board directed the parties to submit final briefs on the merits of both the Evergreen Clause issue and the status quo issue, and that no further evidence would be necessary. (R. Tab M 8.)

The City then moved for reconsideration, arguing that asking the parties to brief whether the three benefits at issue are enforceable under the static status quo doctrine is outside the scope of the Complaint. (R. Tab N.) Additionally, the City requested additional time to submit briefs. (R. Tab N.) The Board denied the City's motion, reasoning that it would treat the two submitted issues separately. (R. Tab O.) The parties subsequently submitted their briefs on the merits. (R. Tab P; Tab Q.)

On December 15, 2011, the Board issued two separate decisions. The first concluded that the Evergreen Clause was not binding because it was never ratified by the City. (R. Tab R.) In its second decision—the decision on appeal here—the Board ruled that "the provisions of the collective bargaining agreement that expired on June 30, 2010, covering the payout of accrued sick time, the payout of clothing allowance balance, and payment of retiree health insurance premiums are enforceable by virtue of the static status quo doctrine pursuant to 26 M.R.S.A. § 964-A(2)." (R. Tab S.)

**Standard of Review**

Under Rule 80C, the Court will review the agency decision for an abuse of discretion, error of law, or findings unsupported by substantial evidence from the record. *See Thacker v.*

4

*Konover Dev. Corp.*, 2003 ME 30, ¶ 14, 818 A.2d 1013, 1019. The Court must defer to the agency's interpretation of its own internal rules and regulations unless they "plainly compel a contrary result." *Rangeley Crossroads Coal. v. Land Use Reg. Comm'n*, 2008 ME 115, ¶ 10, 955 A.2d 223, 227. Similarly, the Court gives great deference to an agency's interpretation of a statute it is charged with administering. *See id.*

## Discussion

*I.     Jurisdiction of the Maine Labor Relations Board*

The City argues that the Board did not have the jurisdiction to decide whether the benefits in question—health insurance for retiring firefighters, certain sick leave payout, and uniform allowance benefits—were enforceable under the status quo doctrine. The Court treats this argument as two distinct issues: (1) whether the Board has jurisdiction pursuant to 26 M.R.S.A. § 964-A(2) to decide this type of dispute; and (2) whether the Board unfairly prejudiced or denied due process to the City by combining the two proceedings in the manner heretofore described.

*a.    The Board's Jurisdiction to Decide the Static Status Quo Issue*

A determination for this issue hinges on an evaluation of how the Board interpreted § 964-A(2), a determination presently scrutinized by the Court. The statute provides:

[i]f a contract between a public employer and a bargaining agent signed after October 1, 2005 expires prior to the parties' agreement on a new contract, the grievance arbitration provisions of the expired contract remain in effect until the parties execute a new contract. In any arbitration that is conducted pursuant to this subsection, an arbitrator shall apply *only those provisions enforceable by virtue of the static status quo doctrine* and may not add to, restrict or modify the applicable static status quo following the expiration of the contract unless the parties have otherwise agreed in the collective bargaining agreement. All such grievances that are appealed to arbitration are subject exclusively to the grievance and arbitration process contained in the expired agreement, and the board does not

5

have jurisdiction over such grievances. The arbitrator's determination is subject to appeal, pursuant to the Uniform Arbitration Act. *Disputes over which provisions in an expired contract are enforceable by virtue of the static status quo doctrine first must be resolved by the board*, subject to appeal pursuant to applicable law. The grievance arbitration is stayed pending resolution of this issue by the board.

(Emphasis added).

While the City concedes that the Board could resolve the dispute over whether the three benefits in question are enforceable under the status quo doctrine, it asserts that certain arbitration language—primarily, "grievance arbitration is stayed pending resolution of this issue by the board"—requires that a grievance arbitration be filed prior to a board determination. (City Br. 6.)

The Court does not interpret the statute as containing an arbitration mandate. Yes, § 964-A(2) provides generally that when a CBA expires, the arbitration procedure contained therein remains in effect. The statute goes on to clarify that "only those provisions enforceable by virtue of the static status quo doctrine" are subject to arbitration. 26 M.R.S.A. § 964-A(2). The statute, thus, purposefully delegates authority to the Board to determine which provisions meet that description when it provides that *the Board* must first resolve "any dispute[] over which provisions in an expired contract are enforceable by virtue of the static status quo doctrine." *Id.*

The Board clearly delineated the respective roles of both itself and the arbitrator in its August 9, 2011 interim order when it wrote: "the Board determines what the status quo is that must be maintained, and the arbitrator will determine whether, in fact, there has been a change." (R. Tab M. 6.) The City, however, has pointed to nothing, either in § 964-A(2) or elsewhere, purporting to dictate a process with which a litigant must conform in order to have the Board resolve "disputes over which provisions in an expired

contract are enforceable by virtue of the static status quo." 26 M.R.S.A. § 964-A(2). Nothing in the statute, therefore, justifies an interpretation different than the one the Board articulated in its interim order.

### b. The Board's Purported Due Process Violation

The City maintains that it was entitled to notice of the status quo issue in the Complaint, as well as an opportunity to present evidence on that issue at a hearing. (City Br. 7.) The City alleges that the Board conducted an improper and unfair proceeding, the result of which deprived the City of its due process rights generally. (City Br. 7.)

"The essential requirement of due process in the administrative context is that a party be given notice and an opportunity to be heard. *Maddocks v. Unemp't Ins. Comm'n*, 2001 ME 60, ¶ 7, 768 A.2d 1023, 1025. Section 964-A(2) contains no provision requiring a litigant to file any sort of complaint to provide notice and initiate the process of resolving a status quo dispute. In fact, when the Union introduced the status quo resolution issue at the May 11, 2011 hearing, the Board terminated discussion in order to allow for a full briefing on the topic of whether it could decide the issue. Afterward, at the August 9, 2011 interim order, the Board determined that § 964-A(2) allowed and even required it to resolve this dispute. In that order, the Board clarified that it would treat the status quo issue distinct from the Evergreen Clause issue, and it ordered a briefing on the merits. The Court determines that the August 9, 2011 order provided sufficient notice to the parties that the status quo issue was thereafter on the table.

The Court now addresses the issue of whether the parties were entitled to an evidentiary hearing to develop a factual record with respect to the status quo issue, as the Union argues. With regard to the hearing component, the Board was required to provide

7

the Union with a "reasonable opportunity for a fair hearing, the conduct of which is governed by . . . [the] Administrative Procedures Act." *Maddocks*, 2001 ME 60, ¶ 7, 768 A.2d 1023. Generally, under the APA, "every party shall have the right to present evidence and arguments on all issues, and at any hearing to call and examine witnesses and to make oral cross-examination of any person present and testifying." 5 M.R.S.A. § 9056(2).

Here, the CBA contained the three provisions in question, and was presented as evidence since the inception of the matter, starting with their articulation in the Complaint. (R. Tab A.) As the Union argued in its brief, "the terms of the expired agreement are evidence of the status quo that must be maintained." (Union Br. 8.) In other words, it is difficult to see what other evidence the Board would have required in order to make a factual determination. The Board determined, in its interim order, that it had all the necessary and relevant evidence, and thus simply directed the parties to prepare briefs.[5]  Additionally, as to the City's due process claim, while due process guarantees the right to be heard, it does not necessarily guarantee the right to a hearing such as the one the City proposes. The City had its opportunity to be heard, and in fact, had more than one opportunity since it submitted its motion to reconsider the interim order, as well as its brief in support of its 80C petition.

---

[5] Indeed, in its brief, the Union points out that the Board did not allow either party to submit evidence on the status quo dispute. (Union Br. 8.) The Court agrees with the Union's conclusion that since the parties had presented the expired CBA to the Board from the outset of the case that it was reasonable for the Board to determine that no additional evidence on the static status quo subject was necessary. (Union Br. 8-9.)

8

II. *Application of the Static Status Quo Doctrine*

The duty to bargain in good faith includes "the obligation to maintain the status quo following the expiration of a contract." *Bd. of Trustees of the Univ. of Me. v. COLT*, 659 A.2d 842 (Me. 1995). It is important, however, to note that the duty to bargain in good faith, and by extension, the obligation to maintain the status quo, applies only to "mandatory" subjects of bargaining, including "wages, hours, working conditions, and contract grievance arbitration." 26 M.R.S.A. § 965(1)(C). *See also Mtn. Valley Edu. Ass'n v. Sch. Admin. Dist. No. 43*, 655 A.2d 348, 351 (Me. 1995).

The Law Court has approved the "strict status quo" approach, which renders the mandatory terms of a contract essentially frozen after it expires. *COLT*, 659 A.2d at 845-46. In *COLT*, the court held that wage increases, beyond those scheduled in a three-year contract, were not enforceable after the contract expired. *See id.* The court reasoned that the payment of increased wages could have an enormous impact on the University's budget, which would force the employer to make considerable concessions not contemplated by the contract.[6] *See id.* at 845.

Returning to the instant matter, three provisions of the CBA are in question here. First, the CBA provides that an employee who has accumulated 120 unused days of sick leave shall be "remunerated on an annual basis for those days not used as sick leave in excess of 120." (R. Tab A, CBA Art. 11(2).) Second, the CBA earmarks $475.00 per

---

[6] The Board, and Superior Court on appeal, applied the *COLT* holding to a disagreement over whether an employer was required to continue paying its proportionate share of health insurance premiums after a CBA expired in *Lewiston Sch. Dep't v. MSEA, SEIU Local 1989*, No. AP-09-001 (Me. Super. Ct. Oct. 6, 2009). While this is a relevant application of the *COLT* holding, the Union, in citing to this case, did not provide the Court with access to it. That aside, in *Lewiston Sch. Dep't*, the Board and Superior Court held that the employer was required to continue payments, thereby rejecting the employer's argument that the amounts of its contributions should be frozen at the time the contract expired. *See id.*

employee annually to pay uniform costs, and if any balance remains on May 1, "employees will be paid such balance in a lump sum amount by June 30 each year." (R. Tab A, CBA Art. 30.) Third, "[w]hen a firefighter [or battalion chief] retires with a minimum of [twenty to] twenty-five[, depending on the date of hire,] years of creditable service with the City of Augusta, Fire Department, and in good standing, the City will pay 100% of employee hospital insurance benefits until such time as eligible for Medicare coverage." (R. Tab A, CBA Art. 12(3).)

Addressing the sick leave payout provision first, the Board concluded that it was a mandatory subject of bargaining as a "form of compensation," and, thus, it was "materially and significantly related to wages . . . ." (R. Tab S [hereinafter "Board Decision"] 13.) The Board then concluded that "[t]he sick time payout provision is enforceable under § 964-A(2) by virtue of the static status quo because continuation of this provision is necessary to maintain the existing level of wages, unlike the step increase in *COLT*, which changed wages." (Board Decision 14.)

As for the uniform allowance payout provision, the Board concluded that it too was a mandatory subject of bargaining since it was also a "form of compensation." (Board Decision 15.) The Board then concluded that the provision continued to be enforceable because "[e]liminating this potential earning results in a substantial change in the status quo, as there is a very real potential loss of income." (Board Decision 15.) With regard to both the sick leave and uniform provisions, the Board found that the City was not forced to make a "substantial concession," like that which was found to be improper in *COLT*, because the amounts imposed were established and existed under the expired contract. (Board Decision 16.)

10

Before addressing the retirement benefits provision, the Court especially defers to the Board's determination that the above provisions represented "forms of compensation," in part, because the City only devotes a single page to the sick leave and uniform allowance payout provisions. (City Br. 15-16.) The City merely declares that those two provisions do not constitute wages, but offers no authority to refute the Board's conclusion to the contrary. Also, the City asserts that allowing the payouts to continue after the expiration of the CBA alters the static status quo in violation of *COLT*. The City's effort in this respect does not, however, compel a different result than that reached by the Board here.

As to the retirement benefits provision, the Board held that it was a mandatory subject of bargaining "to the extent that it is a future benefit for active employees." (Board Decision 19.) Furthermore, that provision continued to be enforceable because "[t]he terms of the expired agreement clearly state that the City will pay 100 percent of the premium costs." (Board Decision 19.) The Board distinguished *COLT*, where pay raises would have increased the employer's obligation, because here "the City is merely required to continue [to] pay the same proportion that it had been paying, that is, 100 percent." (Board Decision 19.) For this provision, moreover, the Board read the obligation to arise even when the firefighter becomes eligible and retires after the CBA expired.[7] (Board Decision 20.) The Board reasoned: "[t]here is no condition stated in the agreement that the individual must retire prior to the expiration of the contract." (Board Decision 20.)

---

[7] It is worth noting that the Board actually rejected the Union's position on this issue. The Union asked only that the City be required to pay retirement benefits to those employees who became eligible before expiration of the CBA (including those who might not actually retire until after expiration). (R. Tab P 7.)

11

The City here does not argue that the retirement benefits provision is not "mandatory," and concedes that it must continue to pay benefits to employees who retired before the CBA expired. (City Br. 10.) However, the City asserts that the provision is only enforceable as to those employees "who in fact retired during the term of the contract," not those who retire after the CBA expires. (City Br. 10.) The City argues that enlarging its obligation in order to encompass new retirees is "just like the requirement to continue paying annual wage increases" struck down by the Law Court in *COLT*. (City Br. 10.) The City argues that this would alter the status quo because it had only agreed in the CBA "to provide retiree health insurance to employees who retired during its term." (City Brief 10.)

The Court agrees with the Board's interpretation of the holding of *COLT*. In *COLT*, employees enjoyed a "specified increase in wages" once a year for the term of the contract. *COLT*, 659 A.2d at 844. The increases were based on separate wage scales for each year of the agreement, not, for instance, a percentage increase set on a yearly basis. *See id.* Thus, enforcing future wage increases would essentially compel the employer to accept a payment formula it had not previously approved. *See id.* at 846. Here, in contrast, the CBA unequivocally provides for 100% payment of the benefits in question, so enforcing the provision post-expiration does not enlarge the City's obligation, or compel it to accept a commitment it had not already considered and approved. Accordingly, its assessment that the "specified increase in wages" in *COLT* were comparable to the post-expiration enforcement of the retirement benefits provision is misplaced. The City argues that enforcement alters the status quo because new, additional employees will claim the benefit post-expiration and the City will sustain a

12

greater financial burden. (City Br. 11.) *COLT* is, therefore, distinguishable in this respect because the added financial burden of wage increases in *COLT* was derived from a payment formula that did not exist under the former contract, whereas here the City was aware that additional employees would later become eligible as their circumstances changed.

Additionally, the CBA in *COLT* was specifically tied to the three years of the contract. Here, in contrast, the provision takes effect "[w]hen a firefighter retires," and does not otherwise provide a time limitation. Unlike the contract in *COLT*, the CBA here did not specifically limit its coverage to employees who retired during its term, and, therefore, the City's position that the retirement benefits provision is only enforceable as to those firefighters who retired before the CBA expired is of little merit.

## Conclusion

The Court affirms and upholds the Board's determination in this matter. The Court agrees that the Board had sufficient jurisdiction to determine the static status quo issue, and it likewise appropriately applied the static status quo doctrine to the benefits in question.

The entry will be:

The Maine Labor Relations Board decision is upheld.

_____      _____

DATE                                SUPERIOR COURT JUSTICE

13

Action:  Petition for Review

      80C                                                    **J. Murphy**

City of Augusta                    vs.          Local 1650, IAFF, AFL-CIO-CLC
                                                and Maine Labor Relations Board

Plaintiff's Attorney                            Defendant's Attorney

Stephen Langsdorf, Esq.                          Lisa Copenhaver, Esq. (MLRB)
45 Memorial Circle                               90 State House Station
P.O.Box 1058                                     Augusta, Maine 04333-0090
Augusta, Maine 04332-1058
                                                 Howard Reben, Esq. (Local 1650 et al)
                                                 P.O. Box 7060
                                                 97 India Street
                                                 Portland, Maine 04112

                                                 Douglas Steele, Esq.  (Local 1650 et al)
                                                 1101 Vermont Avenue NW, Suite 1000
                                                 Washington, DC  20005

Date of Entry

| | |
|---|---|
| 12/28/11 | Petition for Review, filed. s/Langsdorf, Esq. |
| 1/9/12 | Letter entering appearance, filed. s/Copenhaver, Esq. |
| 1/13/12 | Letter entering appearance, filed. s/Reben, Esq. |
| 1/20/12 | Record, filed 1/13/12. s/Copenhaver, Esq. |
| 1/25/12 | Notice and Briefing Schedule issued and mailed to attorneys of record. |
| 2/15/12 | Consented-To Motion To Enlarge time For Filing Of Petitioner's Brief, filed.  s/Langsdorf, Esq. |
| 2/23/12 | ORDER, Murphy, J.  (2/22/12)<br>Petitioner's Motion to Enlarge is GRANTED.  Petitioner's deadline to file its brief is 3/19/12.  Copy to attorneys of record. |
| 3/21/12 | Brief In Support Of Petition For Review Of Final Agency Action, filed 3/19/12.  s/Langsdorf, Esq. |
| 3/23/12 | Plaintiff's Motion For Admission *Pro Hac Vice,* Declaration of Douglas L. Steele, D.C. Court of Appeals member in good standing, filed.  s/Reben, Esq. |
| 3/30/12 | ORDER, Murphy, J.<br>Douglas L. Steele allowed to appear in this case *pro hac vice,* as co-counsel for Respondent IAFF Local 1650.<br>Copy to Attys Langsdorf, Copenhaver, Reben, Steele. |

| | |
|---|---|
| 4/18/12 | Brief of Respondent Maine Labor Relations board in Opposition to Petition For Review, w/ Appendix, filed 4/17/12. s/Copenhaver, Esq. |
| 4/19/12 | Brief In Opposition To Petition For Review, filed. s/Steele, Esq. s/Reben, Esq. |
| 5/1/12 | Reply Brief In Support Of Petition For Review, filed. s/Langsdorf, Esq. |
| 7/18/12 | Oral argument scheduled for 8/8/12 at 10:00 a.m.<br>Motion list mailed to Attys Langsdorf, Reben, Steele, Copenhaver. |
| 8/2/12 | Motion To Continue Oral Argument, filed. s/Langsdorf, Esq. |
| 8/2/12 | ORDER, Murphy, J.<br>Granted. Case to be heard at 9:00 a.m. on 8/8/12<br>Copy to Attys Langsdorf, Copenhaver, Reben, Steele. |
| 8/8/12 | Oral argument held. Murphy, J.<br>Stephen Langsdorf, Esq., Douglas Steele, Esq., and Lisa Copenhaver, Esq.<br>Tape 1578, Index 4871-7448 and Tape 1579, Index 736-857<br>Under advisement |
| 10/15/12 | ORDER ON RULE 80C APPEAL, Murphy, J. (10/12/12)<br>The Maine Labor Relations Board decision is upheld.<br>Copy to Attys Langsdorf, Copenhaver, Reben, Steele.<br>Copy to repositories. |
| 10/15/12 | Notice of removal of record/exhibits mailed to Attys Langsdorf, Copenhaver, Reben, Steele. |